**NATIONAL LABOR RELATIONS BOARD
v. PRETTYMAN et al.**

No. 8547.

Circuit Court of Appeals, Sixth Circuit.

Feb. 13, 1941.

Richard C. Barrett, of Washington, D. C. (Charles Fahy, Robert B. Watts, Laurence A. Knapp, and Robert Kramer, all of Washington, D. C., on the brief), for petitioner.

Arthur J. Wiltse, of Ann Arbor, Mich., for respondents.

Before HICKS, SIMONS and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is a proceeding by the National Labor Relations Board to enforce its order issued pursuant to Section 10(c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., against respondents, Horace G. Prettyman and Arthur J. Wiltse, co-partners, doing business as the Ann Arbor Press.

After charges were filed against respondents by the International Typographical Union, a labor organization, the petitioner issued a complaint against respondents on April 23, 1938, alleging, in addition to jurisdictional matters, that since September 1, 1937, they had engaged in unfair labor practices within the meaning of Section 8(1) (2) (3) and (5) of the Act.

Respondents answered and denied the jurisdiction of the Board and all allegations of the complaint. An examiner was designated and a hearing was had in which respondents participated and at which proof was heard. The Trial Examiner filed his intermediate report containing findings of fact and conclusions of law supporting the allegations of the complaint. Respondents filed exceptions which, after hearing, were overruled by the Board and a finding made that respondents had violated Section 8(1) (2) (3) (5) and Section 2(6) (7) of the Act. The Board issued a cease and desist order requiring the respondents (a) to withdraw all recognition from and completely disestablish an Association of its employees, (b) to bargain collectively with the International Typographical Union as a representative of its employees, (c) upon application, to reinstate their employees who went on strike and those who had been discriminatorily discharged for union activities, placing those for whom employment was not immediately available upon a preferential list, (d) to make whole the employees discriminated against for union activity for any loss of pay they may have suffered by reason of such discrimination and to make whole for loss of pay any strikers who, five days after application, were not reinstated or placed upon a preferential list, and (e) to post appropriate notices.

Petitioner seeks to have the cease and desist order enforced.

Respondents resist enforcement on the following grounds: (1) That their business was intrastate and did not directly affect commerce among the states; (2) That the Board's hearings were arbitrary and they were denied due process of law; (3) That the Board based its order in part on incompetent evidence and that its order is not supported by substantial evidence; (4) The Board erroneously denied the complainant's motion to dismiss the proceeding; (5) That they had settled their controversy with the complainants before the Board entered its order.

Respondents are co-partners, operating a commercial printing establishment with their only plant and offices at Ann Arbor, Michigan. They annually purchase about $5,000 worth of repair parts for their plant, approximately 66⅔ percent or $3,333 worth of which are purchased outside Michigan.

During 1937, respondents acquired $163,-813.47 worth of raw materials, $26,487.52 or 16 percent of which were imported from points outside Michigan. During 1937, respondents produced $400,631.90 worth of printed material, of which amount, four percent, or $17,945.97, was sent to customers outside of the state. About $150,000 of the total $400,000 production consisted of various periodicals, most of which were addressed by respondents and delivered by them to the Ann Arbor post office, the postage being paid by customers of respondents. In most cases the periodicals were mailed out of the state. Respondents also print matter for national manufacturers and dealers such as General Motors Corporation and Nash Kelvinator Corporation. Some of these materials are mailed by respondents to points outside Michigan at the direction of their customers, and some delivered to the customers in the state and by them distributed throughout the country.

Under the Supreme Court's latest pronouncement of constitutional power, the right of Congress to regulate interstate commerce is plenary and extends to all such commerce whether great or small. The amount thereof is of special significance only to the extent that Congress may be taken to have excluded commerce of small volume from its regulatory measure by express provision or fair implication. National Labor Board v. Fainblatt, 306 U.S. 601, 606, 59 S.Ct. 668, 83 L.Ed. 1014; National Labor Board v. Bradford Dyeing Association, 310 U.S. 318, 326, 60 S.Ct. 918, 84 L.Ed. 1226.

Under these cases the respondents' business sufficiently affected interstate commerce to bring it within the National Labor Relations Act. The Board had jurisdiction.

Frank H. Bowen, Regional Director of the National Labor Relations Board for the Seventh Region, which includes the State of Michigan, pursuant to charges filed by the International Typographical Union issued a complaint March 18, 1938, against respondent and issued notice of a hearing at Ann Arbor, Michigan, on March 31, 1938. On March 30, 1938, respondents instituted an action in chancery in the Circuit Court for the County of Washtenaw against Frank H. Bowen, Regional Director for the Seventh Region of the National Labor Relations Board, Harold A. Cranefield, Regional Attorney for the Board,

John Doe, Trial Examiner for the Board, Harry H. Reifin and Louis Falstreaux, officers of the International Typographical Union, Local No. 154, and Independent Association of Ann Arbor Press Employees, Inc., seeking to enjoin the defendants officers of the National Labor Relations Board, from holding a hearing on March 31, 1938, or at any other time on the complaint issued against them by the National Labor Relations Board and enjoining defendants Reifin and Falstreaux from interfering with respondents' business by intimidating and coercing employees and former employees into joining International Typographical Union 154, and by making false statements to customers of respondents and false statements of their relations with their employees. They prayed for other relief not material here.

Without notice or hearing on March 30, 1938, the Michigan Court issued an injunction conformable to the prayer of respondents' petition. On April 18, 1938, the National Labor Relations Board by its attorney, Harold A. Cranefield, filed a motion in the State action for the dissolution of the injunction and that the bill of complaint be dismissed. The court requested briefs and took the motions under advisement and on November 22, 1938, entered a decree dissolving the injunction and dismissing the bill of complaint.

The National Labor Relations Board abandoned the proceedings against complainant commenced March 18, 1938, and instituted the present proceedings. The unfair labor practices on which the present complaint is based, were identical with the ones on which the hearing was enjoined by the Michigan Court.

The charges on which petitioner issued its complaint were filed with the Board in Washington, D. C., and notice of a hearing there was mailed to respondents April 25, 1938, and a hearing had from May 2 through May 12, 1938, before a Trial Examiner duly designated by the Board. Petitioner admits that the hearing was had in Washington solely to avoid interference by the State Courts of Michigan.

On April 30, 1938, respondents moved the Board to abandon the hearing in Washington on the ground that their residences and place of business and where the controversy arose with their employees was in the city of Ann Arbor, approximately 700 miles from Washington and that the trial in Washington would place an unreason-

able burden on them in bringing witnesses to the hearing and that such a proceeding was unreasonable and arbitrary and denial of due process. They further claimed they were financially unable to make a proper defense to the matters set forth in the complaint at such a great distance from their residences and place of business. They further stated they were compelled to answer the complaint within five days and be prepared to go into a trial of the issues within nine days. Their motion was supported by the affidavit of the respondent, Arthur J. Wiltse. The motion was denied.

Respondents insist that the present hearing did not comport with the standards of fairness inherent in procedural due process for the reason that their place of business, all of their records and employees and all of their witnesses lived six hundred and fifty miles from Washington and that all of their employees who had any knowledge of the matters inquired about were their executives and to have transported them to Washington would have required the closing of their plant for ten days and imposed on them a heavy financial burden.

■ No particular form of procedure is required to constitute due process in administrative hearings. Its requirement must be measured in the light and purpose of such hearings. · Under the National Labor Relations Act, hearings are not of an executive character purely, but require the taking and weighing· of evidence, determination of facts based upon consideration of evidence and the making of an order supported by such findings. Proceedings under the Act in their essential aspects resemble judicial hearings, and may be characterized as quasi judicial. Morgan v. United States, 298 U.S. 468, 481, 56 S.Ct. 906, 80 L.Ed. 1288.

■ An employer is entitled to a hearing of and decision on the charges against him according to the fundamental principles that inhere in due process of law, and indispensable requisites of such hearings are that the course of proceedings shall be appropriate to the case and just to the employer; that he shall be notified of the charges against him in time to meet them and shall have an opportunity to be heard and cross-examine the witnesses against him and shall have time and opportunity at a convenient place, after the evidence against him is produced and known to him, to produce evidence and witnesses to refute the charges, and that the decision

of the Board shall be governed by and based upon the .evidence produced at the hearing.

■ Under the provisions of the Act, ch. 372, Section 5, 49 Stat. 452, 29 U.S.C.A. § 155, the principal office of the Board is in the District of Columbia, but it may meet and exercise any or all of its powers in any place in the United States and it may delegate its power to hear complaints to any of its agents who may prosecute the inquiry in any part of the United States.

The petitioner urges on us that under the above provisions of the Act, it has the uncontrolled discretion to hold hearings at whatever point it deems proper within the United States and its territories. To this we cannot agree. In the Act, the Congress manifests an intention to create a system for the prevention of controversies between employers and employees and it is the duty of the court to effectuate that purpose by such construction as will make the system consistent in all of its parts and uniform in all of its operations. To this end, the procedure must harmonize with the characteristics of our system of government that the law is supreme, which means, in the first place, the absolute supremacy or preponderance of regular law as opposed to the influence of arbitrary power. It excludes the existence of arbitrariness, of prerogative, or even of wide discretionary authority on the part of the government. Where great inconvenience will result to persons affected by a statute from a particular construction, that construction should be avoided unless the meaning of the legislature is so plain no other is possible. Knowlton v. Moore, 178 U.S. 41, 77, 20 S.Ct. 747, 44 L.Ed. 969.

■ The power conferred on the Board by the Act to hold hearings anywhere within the territorial limits of the United States, was not conferred for its sole benefit, but for the benefit also of those subject to the provisions of the Act. It was not intended that those affected by the Act should be penalized by being required to travel and transport witnesses unreasonable distances to attend hearings pursuant to complaint, nor was it intended that the Act should be used as an instrument of intimidation or oppression on those affected by it. One of the purposes to be accomplished in the administration of every law is the maintenance of public confidence in the value of the measure. This idea was clearly expressed in

Morgan v. United States, 304 U.S. 1, 14, 58 S.Ct. 773, 775, 999, 82 L.Ed. 1129, in which it was said:

"The first question goes to the very foundation of the action of administrative agencies intrusted by the Congress with broad control over activities which in their detail cannot be dealt with directly by the Legislature. The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the Legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,'— essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an 'inexorable safeguard.' "

 It is the practice of the Board to hold hearings at places convenient to the parties and petitioner assigns as its reason for departing from this practice that the respondents obtained from the Circuit Court of Washtenaw County an injunction prohibiting the hearing at Ann Arbor. The action of the respondents in the State Court was in good faith. They there contended they were engaged exclusively in intrastate commerce, for which reason the Board lacked jurisdiction, and the Court sustained them. The Board was not compelled to litigate its jurisdiction in the State Court of Michigan, but its representative voluntarily participated in that hearing. After an unfavorable decision, the Board sought to avoid jurisdiction of the State Court, by resorting to its alleged powers under the statute to institute a new proceeding beyond the reach of the Michigan courts and at a place remote from all the necessary witnesses. If the Board had authority to thus proceed, it could have issued its citation to respondents to appear in St. Andrews, Maine, or Fort Dick, California. No sensible rule of statutory construction would support such an interpretation of the statute and such a course of conduct would shortly bring a beneficent statute into disrepute. Fair play, under the statute, required the Board to hold a hearing at a place convenient to each of the parties.

 Section 10(e) of the Act, 29 U.S. C.A. § 160(e) authorizes this court, when a petition for enforcement of the Board's order is brought before it, to consider any objection made before the Board or one of its agents, or to pass upon objections not so raised, if the circumstances are such as to justify it.

 Congress has given the Board the authority to administer the National Labor Relations Act, subject to the supervisory power of the Court of Appeals and the court must act within the bounds of the statute, without intruding upon the administrative province, but it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action. Ford Motor Company v. National Labor Relations Board, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221. The court is not compelled to enforce an order of the Board which is impregnated with a hearing not comporting with the standards of fairness inherent in procedural due process. So scrupulous are our courts to maintain the supremacy of the ordinary law in cases where officers of the Government itself are concerned, they will not permit the Government to profit in any way by wrongs which its officers have committed. Silverthorn Lumber Company v. United States, 251 U.S. 385, 391, 40 S.Ct. 182, 64 L.Ed. 319, 24 A. L.R. 1426.

"The maintenance of proper standards on the part of administrative agencies in the performance of their quasi judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play." Morgan v. United States, supra.

 Even if the order of the Board were justified by the facts, which we are not here deciding, the necessity of according due process of law to the re-

spondents is not obviated. No order is just if obtained without due process of law; otherwise, the Board could enter orders without a hearing. Ohio Bell Telephone Company v. Public Utilities Commission, 301 U.S. 292, 304, 57 S.Ct. 724, 81 L.Ed. 1093.

■ On November 23, 1938, the International Typographical Union, which had filed the charges that resulted in the complaint against respondents, petitioned the Board to dismiss the charges, because an amicable settlement of the differences had been made. The Board denied the motion. Respondents insist that as the controversy between them and their employees had been settled, the Board, in the exercise of a reasonable discretion, should have ended the hearing and for this alleged abuse they urge on us to remand the cause with directions to dismiss. This we cannot do under the Act, as it does not provide individuals with administrative remedy for private wrongs. An employee or an association of such persons, if deeming themselves aggrieved, because of unfair labor practices on the part of an employer, may make complaint to the Board against the alleged wrongdoer, but under the statute the formal complaint must be brought in the Board's name and prosecuted wholly by it at Government expense. The power to prevent unfair labor practices is vested by Congress in the Board alone and by the plain language of the Act, Section 10(a), the power in the Board "shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise." Federal Trade Commission v. Klesner, 280 U. S. 19, 26, 50 S.Ct. 1, 74 L.Ed. 138, 68 A.L. R. 838; National Labor Board v. Greyhound Lines, 303 U.S. 261, 271, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; National Labor Relations Board v. Colten, 6 Cir., 105 F.2d 179; National Labor Relations Board v. Louisville Refining Company, 6 Cir., 102 F.2d 678.

■ The purpose of the National Labor Relations Act is to promote peaceful settlement of disputes between employers and employees by providing legal remedies for the invasion of employees' rights of self organization and collective bargaining, and at any stage of the proceedings, after complaint has been filed, when the object of the complaint has been accomplished, the proceedings should be brought to an end, but the Board itself representing the United States is a party in interest relating to unfair labor practices under the Act and any agreement between the parties settling their differences must have the approval of the Board. No evidence appears as to the terms of the settlement. Under the facts here, there is no abuse of the Board's discretion.

Since the Board is not empowered to initiate proceedings on its own motion but must await the filing of charges by employees before issuing a complaint, and since there has been, as indicated, an amicable settlement of the differences between the respondents and the representatives of their employees in a collective bargaining agreement, and the right of the Board to proceed, notwithstanding the request of the complaining employees that their charges be withdrawn, has now been vindicated, it may appear to the satisfaction of the Board that the public interest no longer requires the renewal of proceedings in a situation where specific grievance has already been compromised.

An order will be entered denying the petitioner's petition in its entirety but without prejudice to the right of the Board to conduct a new hearing at Ann Arbor, Michigan.