**UNITED STATES of America,**
**Plaintiff,**

v.

**INDEPENDENT BULK TRANSPORT,**
**INC., Defendant.**

No. 74 Civ. 2257.

United States District Court,
S. D. New York.

May 29, 1975.

Paul J. Curran, U. S. Atty., S. D. N. Y., Gilbert S. Fleischer, Atty. in charge, Admiralty & Shipping Section, Dept. of Justice, New York City, for U. S.; John C. Lane, New York City, of counsel.

Peter M. Frank, New York City, for defendant; Jared B. Stamell, Washington, D. C., of counsel.

## MEMORANDUM

FRANKEL, District Judge.

Plaintiff United States sues for civil penalties administratively adjudged by the Coast Guard for one alleged and one admitted oil spill from defendant's tank barge in March and May 1973, respectively. Upon facts largely undisputed, the court has cross-motions for summary judgment posing issues of administrative procedural law.

The case arises under § 311(b) of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1321(b), subsection (3) of which prohibits oil discharges on navigable waters and subsection (6) of which says:

"Any owner or operator of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation of paragraph (3) of this subsection shall be assessed a civil penalty by the Secretary of the department in which the Coast Guard is operating of not more than $5,000 for each offense. No penalty shall be assessed unless the owner or operator charged shall have been given notice and opportunity for a hearing on such charge. Each violation is a separate offense. Any such civil penalty may be compromised by such Secretary. In determining the amount of the penalty, or the amount agreed upon in compromise, the appropriateness of such penalty to the size of the business of the owner or operator charged, the effect on the owner or operator's ability to continue in business, and the gravity of the violation, shall be considered by such Secretary * * *."

The question mainly contested now, and found dispositive by the court, is whether defendant received the "notice and opportunity for a hearing" to which the quoted provision entitled it.

In connection with the first alleged spill, on March 24, 1973, defendant was notified of its right to a hearing by letter dated June 14, 1973, and was offered then an opportunity to close the case without a hearing for $1,000. Choosing the first alternative, a representative of defendant came before a Coast Guard Commander, designated as hearing officer, for an informal hearing on September 5, 1973. The details of this encounter are not important; what is significant, as will appear, is the undisputed fact that matters not disclosed to defendant became part of the agency's case record and basis of decision. In a letter dated September 6, 1973, defendant was informed of the hearing officer's adverse finding and assessment of a $500 penalty.

The same letter informed defendant of its right of appeal to the Coast Guard Commandant. The right was exercised. In a letter dated November 27, 1973, the Commandant announced his affirmance of the penalty assessment.

Similar steps occurred after the second oil spill, which is admitted now though both sides agree it was not major, involving a barrel or two. The determination in this instance was a $1200 penalty, affirmed by the Commandant by letter dated October 31, 1973.

Defendant resisted the penalty assessments on an array of grounds, only a portion of which are reached today. Accordingly, on May 23, 1974, the Government brought the instant case, asserting a first cause of action for the $500 and a second for the $1200.

In the course of pretrial discovery, a couple of months ago, the Government disclosed to defendant "the official Coast Guard record of [these] penalty case[s] * * *."[1] The materials thus disclosed, which "constitute the entire administrative records * * * relative to these penalty cases,"[2] contained a number of items that had never before been shown or described to defendant or any of its representatives. Among other things, there were reports, now flatly denied under oath, that the barge's tankerman was found drunk aboard the barge on the day of the first alleged spill and shortly after midnight again; and that the spill happened because no tankerman was on deck. There was, similarly, a report, of debated relevance, that the barge had no "visible framing of Certificate of Inspection"; a report by the Port Captain and his recommendation that a penalty be assessed; a memorandum of the hearing officer recommending action concerning the allegedly drunken tankerman; a mistaken description of defendant's corporate status; and some other things, characterized now as irrelevant by both sides, but generally not favorable to defendant.

The record concerning the second episode also contained items revealed to defendant only now in this lawsuit, again including the Port Captain's adverse recommendation, again treating of possible actions against the tankerman reported to have been intoxicated, and containing a Dun & Bradstreet report which was at best not relevant, at worst potentially misleading.

These undisclosed matters in the administrative record lead, not surprisingly, to defendant's claim that it was denied rights under both the statute and the Fifth Amendment. No claim is made that the penalty assessment procedure of 33 U.S.C. § 1321(b)(6) is subject to all the requirements of the Administrative Procedure Act. Defendant urges, however, that the minimum Congress must have purposed when it provided for notice and a hearing was not met here. Agreeing with that, the court reaches no question of constitutional law.

Opposing defendant's motion for summary judgment, the Government concedes, properly, that "in general a party to an administrative proceeding is entitled to know and meet the material evidence and to be heard with respect thereto, on any material adjudicative fact genuinely in issue."[3] It is also "conceded * * * that the written communications from the hearing officer to the defendant informing the defendant of his determinations [and of the right to appeal] * * * did not fully state the bases for such determinations."[4] Further, the Government calls to our attention that Congress reflected a purpose to afford a condign measure of "due process and protection of a respondent's rights" when it made the provision for notice and hearing.[5]

Nevertheless, in a kind of "harmless error" approach, the Government argues that the procedures were adequate, or reparable here in court. First, the Government tenders the affidavit of the hearing officer, who undertakes to buttress, amplify and explain his decision. It is sufficient to mention only some of what he says because it plainly will not do. He says, *inter alia*, he gave "little if any cognizance" to the Port Captain's recommendations. But a little would be too much. He says he did not rely "solely" upon one Dun & Bradstreet report and consulted another only as "cumulative evidence." He says defendant's representative could have seen the investigative report had he but asked for it (evidently assuming, without evident

---

1. Pretrial Order ¶ 3(a)(14), (27).

2. Id., ¶ 3(a)(28).

3. Memorandum of Law opposing defendant's motion 15.

4. Id. at 2.

5. H.R.Rep.No.92–911, 92d Cong., 2d Sess. 117 (1972).

basis, that defendant knew the report existed and was in the file).

 Having tendered this repair work, the Government points out that we could hold a hearing *de novo* to supply the *constitutional* requisites when there is a dispute of fact regarding the occurrence of an oil spill as there is in the first cause of action. Then, the Government continues, we should go on to find reasonable the discretionary judgment of the Coast Guard in setting a particular penalty, refraining from the substitution of our judgment for the agency's. But the two points, warring with each other, destroy the Government's position. Defendant was entitled not only to a fair hearing from the hearing officer, but to the appeal of which the latter gave notice. At both levels, defendant had a fundamental right to meet factual matters and contentions that were, or might be deemed, adverse to its position.[6] Apart from the undisclosed matters at the first level, if the promised appeal was to be fair, defendant had a right to know (1) what was in the record before the Commandant and (2) the true bases for the decision to be reviewed. See Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955); Crowell v. Benson, 285 U.S. 22, 47–48, 52 S.Ct. 285, 76 L.Ed. 598 (1932); Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 598 (1971). Both of these fundamentals were denied. The court cannot sustain a purported exercise of discretion when the requirements for exercising discretion fairly were not met. See Ohio Bell Tel. Co. v. Public Utilities Comm'n, 301 U.S. 292, 304–05, 57 S.Ct. 724, 81 L.Ed. 1093 (1937); Scanwell Lab., Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859, 874 (1970); NLRB v. Prettyman, 117 F.2d 786, 791–92 (6th Cir. 1941). The Government is correct, of course, when it insists that the discretionary power to fix the amount that must be

---

6. By the terms of the statute, the defendant was entitled to "notice and opportunity for a hearing." In interpreting the meaning of these two essential components of due process, as a matter of constitutional law as well as when construing statutory language, courts have generally held that while due process is a flexible standard, the fair intendment of these two phrases, absent exigent circumstances, is a procedure which would apprise the defendant of all the evidence to be considered and would give it a chance to rebut that evidence. See Willner v. Committee on Fitness and Character, 373 U.S. 96, 103–06, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); Greene v. McElroy, 360 U.S. 474, 496–97, 507, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Morgan v. United States, 304 U.S. 1, 18–19, 58 S.Ct. 773, 82 L.Ed. 1129 (1938); Crowell v. Benson, 285 U.S. 22, 47–48, 52 S.Ct. 285, 76 L.Ed. 598 (1932); Freitag v. Carter, 489 F.2d 1377, 1382 (7th Cir. 1973); cf. Brandt v. Hickel, 427 F.2d 53, 56 (9th Cir. 1970).

It is possible that deficiencies in the procedures at the initial hearing could in some cases be remedied by a full hearing before the Coast Guard Commandant on the appeal from the district commander's decision. See Opp Cotton Mills, Inc. v. Administrator, Wage and Hour Div., 312 U.S. 126, 152–53, 61 S.Ct. 524, 85 L.Ed. 624 (1941); United States v. Patterson, 465 F.2d 360, 361 (9th Cir.), cert. denied, 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed. 2d 487 (1972); Rosenberg v. Commissioner of Internal Revenue, 450 F.2d 529, 532 (10th Cir. 1971); McTiernan v. Gronouski, 337 F.2d 31, 35 (2d Cir. 1964). But there was no such full hearing at the appellate stage in this case. Moreover, to satisfy the statutory mandate, the defendant on the appeal should have known in full the record of the initial hearing which the Commandant would be reviewing on appeal, the hearing officer's reasons for his decision, and any additional evidence the Commandant would be considering, and should have had an opportunity to be heard in rebuttal. See Republic Aviation Corp. v. NLRB, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); Morgan v. United States, *supra*, 304 U.S. at 18–19, 58 S.Ct. 773; Londoner v. Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908); Langevin v. Chenango Court, Inc., 447 F.2d 296, 300 (2d Cir. 1971).

Procedures required by the statute itself, putting to one side the requirements of due process, were not met at either stage. These deficiencies cannot now be cured by a trial *de novo* before the district court. They certainly are not so curable when, as the Government insists and the court agrees, the ultimate decision is one for administrative discretion.

paid as a penalty for a violation is the Coast Guard's, not ours.[7] By that very token, the neglect by the Coast Guard of its procedural duties in making the fac-

tual determinations about whether a violation took place and the appropriateness of the penalty assessed must be remedied there, not here.[8] See FPC v. Idaho

7. In reviewing the imposition of administrative sanctions, a court has two tasks. The court must first examine the agency's findings of fact and conclusions of law, and sustain the findings and order if they are supported by sufficient evidence on the record and not contrary to law. If the imposition of some sanction is supported by the statute and the facts are fairly found, the court's only task is to determine whether the agency has abused its discretion in ordering the particular sanction. See Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 187–89, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973); Jacob Siegel Co. v. FTC, 327 U.S. 608, 612, 66 S.Ct. 758, 90 L. Ed. 888 (1946); Kent v. Hardin, 425 F.2d 1346, 1349–50 (5th Cir. 1970).

In the present case, the imposition of a civil penalty up to $5000 for each violation is authorized by the statute. In determining the amount of the penalty, the Coast Guard is instructed to consider factual issues such as "the appropriateness of such penalty to the size of the business of the owner or operator charged, the effect on the owner or operator's ability to continue in business, and the gravity of the violation * * *." 33 U.S.C. § 1321(b)(6). If the findings of fact were soundly based—for example, as to "the gravity of the violation"—it may be doubted that the amounts of the penalties could be deemed reversible for abuse.

8. At the cost of some repetition, the court expands here upon the Government's contention that procedural inadequacies at the agency level do not prejudice the defendant because a full hearing can be had in the district court in a trial de novo whenever there are disputed facts concerning the occurrence of an oil spill. While it presses this thought the Government denies that the court can (a) hold a de novo trial on the facts considered in setting a penalty or even (b) review the Coast Guard's order for substantial evidence on issues not to be tried de novo. The latter assertions expose as unsatisfactory patchwork the effort to have some pieces of the decisions, but not others, "heard" by the court de novo. Compare the Supreme Court's observations recently indicating when de novo review is appropriate:

"De novo review * * * is authorized by § 706(2)(F) [§ 10(e) of the Administrative Procedure Act] in only two circumstances. First, such de novo review is authorized when the action is adjudicatory in nature and the agency factfinding procedures are inadequate. And, there may be

independent judicial factfinding when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

The House Report on the APA helps elucidate what is meant by occasions when agency action "is adjudicatory in nature and the agency factfinding procedures are inadequate." The Report explains that "the test is whether there has been a statutory administrative hearing of the facts which is adequate and exclusive for purposes of review." H.R.Rep.No. 1980, 79th Cong., 2d Sess. 45 (1946), U.S. Code Cong.Serv.1946, p. 1195. And the Report summarizes the provision in this manner:

"In short, where a rule or order is not required by statute to be made after opportunity for agency hearing and to be reviewed solely upon the record thereof, the facts pertinent to any relevant question of law must be tried and determined de novo by the reviewing court respecting either the validity or application of such rule or order."

Id.

Thus Congress and the Supreme Court have indicated that if the statute under examination contemplates a full adjudicatory hearing before the agency, a court cannot conduct a trial de novo after it determines that the agency hearing has been inadequate. This sensible scheme prevents agencies from attempting to enlist the courts as convenient backstops; it ensures that administrative responsibility will be both respected and demanded. Following such a course in the instant case calls upon the Coast Guard to conduct its hearings properly, not to transfer the function, intermittently and by mistake, to the district courts.

The Water Pollution Amendments of 1972, of which § 1321 is a part, offer somewhat uncertain signals as to the Congressional intent on the question of where the full hearing should be conducted. On the one hand, the statute states that "[n]o penalty shall be assessed unless the owner or operator charged shall have been given notice and opportunity for a hearing on such charge." 33 U.S.C. § 1321(b)(6) (emphasis added). "Assessment" is, of course, an administrative function. Yet at the same time, the House Report states that in order to protect due process rights the respondent owner will have an "opportunity

Power Co., 344 U.S. 17, 20–21, 73 S.Ct. 85, 97 L.Ed. 15 (1952); SEC v. Chenery Corp., 332 U.S. 194, 199–201, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); Jacob Siegel Co. v. FTC, 327 U.S. 608, 613–14, 66 S.Ct. 758, 90 L.Ed. 888 (1946); Ford Motor Co. v. NLRB, 305 U.S. 364, 372–74, 59 S.Ct. 301, 83 L.Ed. 221 (1939).

Defendant's motion is granted. Plaintiff's cross-motion for partial summary judgment is denied. The complaint is dismissed, but without prejudice to the bringing of a subsequent complaint if and when, after new administrative proceedings, penalties are again assessed and resisted.

It is so ordered.

of a de novo hearing in any collection proceeding initiated by a United States Attorney after the conclusion of administrative procedures." H.R.Rep.No.911, 92d Cong., 2d Sess. 117–18 (1972). The Report puts this statement immediately after a passage which states that provisions of the Administrative Procedure Act will apply in the Coast Guard hearing to protect the respondent's due process rights. At the same time, the requirement of notice and hearing is "not intended to impose in every instance the complex procedural requirements associated with formal adjudicatory hearings * * *." *Id.* at 117.

In a case where the legislative history is this cloudy, we are entitled and well advised to follow relatively plain statutory language. Greenwood v. United States, 350 U.S. 366, 374, 76 S.Ct. 410, 100 L.Ed. 412 (1956) (Frankfurter, J.).