**UNITED STATES of America, Plaintiff,**

v.

**INDEPENDENT BULK TRANSPORT, INC., Defendant.**

No. 78 Civ. 1482 (RWS).

United States District Court, S. D. New York.

Oct. 4, 1979.

Robert B. Fiske, Jr., U. S. Atty., Gilbert S. Fleischer, U. S. Dept. of Justice, New York City, for plaintiff; Craig S. English, New York City, of counsel.

Jared Stamell, New York City, for defendant.

## OPINION

SWEET, District Judge.

The cross motions for summary judgment now before this court present an issue of administrative procedural law made perplexing by the need to determine Congressional intent. What must be determined is whether the applicable procedural requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, apply to a Coast Guard proceeding held pursuant to § 311(b) of the Federal Water Pollution Control Act Amendments of 1972 ("FWPCA"), 33 U.S.C. § 1321(b)(6).

The facts underlying the motion are not significantly disputed. On May 16, 1973, the T/B INDEPENDENT, (the "INDE-PENDENT"), a tank barge owned by defendant Independent Bulk Transport, Inc. ("Independent Bulk"), was loading fuel oil in Bayonne, New Jersey. Because of a tank overflow, oil spilled into the surrounding waters. Pursuant to section 311(b)(6) of the FWPCA, on July 1, 1976 the United States Coast Guard conducted a hearing with respect to the spill and found that approximately 30 to 70 gallons of No. 6 fuel oil had been discharged into the waters of the Kill Van Kull. The hearing officer therefore assessed a $1,200 penalty pursuant to section 311(b)(6) of the FWPCA. Independent Bulk appealed to the Commandant of the Coast Guard who affirmed the hearing officer's findings.

The United States then brought an action in this court to enforce the civil penalties assessed by the Coast Guard. Independent Bulk challenged the validity of the Coast Guard proceeding, and both parties moved for summary judgment. In that action the Honorable Marvin E. Frankel dismissed the United States' complaint on two grounds: (1) the Coast Guard failed to disclose the administrative record prior to assessment of the penalties; and (2) the hearing officer failed to state fully the basis for his decision. *United States v. Independent Bulk Transport, Inc.,* 394 F.Supp. 1319 (S.D.N.Y. 1975). Judge Frankel concluded that the Coast Guard had not complied with the notice and hearing requirements of section

311(b)(6) of the FWPCA and therefore remanded the action to the Coast Guard. Judge Frankel specifically stated, however, "No claim is made that the penalty assessment procedure of 33 U.S.C. § 1321(b)(6) is subject to all the requirements of the Administrative Procedure Act." *Id.* at 1321. While the decision intimated no opinion regarding that issue, Judge Frankel's ruling clearly rested upon the statutory language of the FWPCA, rather than the statutory requirements of the APA. *Id.*

The Coast Guard renewed proceedings against defendant in accordance with Judge Frankel's opinion in April, 1976. Independent Bulk requested a hearing and obtained a copy of the Coast Guard's penalty file concerning the alleged violations of the FWPCA. The Coast Guard held a hearing on July 1, 1976, at which Independent Bulk's attorney appeared. The Coast Guard's hearing officer read the alleged facts comprising the violation to Independent Bulk. The officer had before him a report of a Coast Guard investigation which concluded, based on interviews with employees of the terminal at which defendant's barge had been loading, that oil had been discharged from the barge due to a tank overflow. The hearing officer made a handwritten record of the proceeding.

Independent Bulk contested the factual claim that the oil spill had resulted from an overflow of the INDEPENDENT's tanks; rather it contended that the spill resulted from the failure of employees of the oil terminal to cap a hose. No witnesses, affidavits or written statements were presented to the hearing officer in support of defendant's allegations. Defendant had, however, submitted information pertaining to its financial condition at the time of the alleged overspill. Independent Bulk also protested that the adjudicatory proceeding was not conducted in accordance with the APA.

The Coast Guard officer found that between 30 and 70 gallons of No. 6 fuel oil had overflowed from the INDEPEN-DENT's tanks into the Kill Van Kull and notified Independent Bulk that a $600 civil

penalty had been assessed against it. Independent Bulk appealed this decision to the Commandant of the Coast Guard, raising issues similar to those asserted at the hearing. The Commandant affirmed the hearing officer's decision.

Plaintiff, the United States, filed this action and has moved pursuant to Rule 56, Fed.R.Civ.P., for summary judgment to enforce the $600 penalty. Independent Bulk cross-moves for summary judgment, urging that the hearing conducted by the Coast Guard did not comply with the procedural mandates of the APA, 5 U.S.C. §§ 551 et seq. Independent Bulk also contends that even if the APA does not apply to assessments under 33 U.S.C. § 1321(b)(6), the hearing accorded by the Coast Guard did not comport with the requirements of the Due Process Clause of the Fifth Amendment to the United States Constitution.

 The courts have consistently held that section 1321(b)(6) does not provide for de novo review by the district court of findings of fact made by the Coast Guard, following notice and a hearing, that support penalty assessments. *United States v. Slade, Inc.*, 447 F.Supp. 638, 646 (E.D.Tex. 1978); *United States v. Texas Pipe Line Co.*, No. 77-83-C (D.Okl.1978); *United States v. Atlantic Richfield*, 429 F.Supp. 830, 834–35 (E.D.Pa.1977), *aff'd*, 573 F.2d 1303 (3d Cir. 1978); *United States v. Independent Bulk Transport, Inc.*, supra at 1322–1324, 1323 n.8. *But see United States v. General Motors Corp.*, 403 F.Supp. 1151, 1163–64 (D.Conn.1975). Therefore, if the Coast Guard's findings are supported by substantial evidence and if the assessment is neither arbitrary nor capricious, this court has no power to alter the Coast Guard's determination. 5 U.S.C. § 706(2)(A), (E) (1976). *Matter of Vest Transport Co., Inc.*, 434 F.Supp. 748 (N.D. Miss.1977); *United States v. Atlantic Richfield Co.*, supra at 837. Here, there is substantial evidence in the record to support the Coast Guard's conclusion that the oil spill was caused by a tank overflow from the INDEPENDENT. *See Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–21, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). The mere presence of conflicting evidence in the record does not preclude an agency's determination from being supported by substantial evidence. *Illinois Central Railroad Co. v. Norfolk & Western Railway Co.*, 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966). Furthermore, the Coast Guard's assessment of a $600 civil penalty, based as it was on a consideration of relevant statutory criteria and information on the record, was not arbitrary and capricious. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Whelan v. Brinegar*, 538 F.2d 924, 927 (2d Cir. 1976). Accordingly, if the Coast Guard hearing in this case was not tainted by procedural defects, its decision must stand.

What is at issue is the applicability of the APA to an assessment of a civil penalty against defendant Independent Bulk under section 1321(b)(6). Upon the conclusion that the APA does not apply, the Coast Guard's decision below is affirmed and summary judgment is granted in favor of the United States.

 Section 554 of the APA "applies . . . in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing . . . ." 5 U.S.C. § 554(a) (1976). The provisions of the APA only apply if another statute requires that they be utilized. *United States v. Allegheny-Ludlum Steel*, 406 U.S. 742, 756–57, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972); K. Davis, *Administrative Law Treatise* § 12:10 at 447 (2d Ed. 1978). If a statute does require an adjudicatory hearing to be conducted in accordance with section 554, then the procedural formalities of sections 556 and 557, concerning presentation of evidence, cross-examination, and fact-finding, are applicable. 5 U.S.C. §§ 556, 557 (1976).

The issue before the court is whether 33 U.S.C. § 1321(b)(6) (1976)[1] invokes the pro-

---

1. Section 1321(b)(6) was amended in 1978. The provision for assessment of civil fines by the Coast Guard is unchanged and is now codified as 33 U.S.C.A. § 1321(b)(6)(A) (West

cedural formalities of the APA. Section 1321(b)(6) provides in pertinent part:

> Any owner, operator, or person in charge of any vessel from which oil or a hazardous substance is discharged in violation of paragraph (3)(i) of this subsection [2] who is otherwise subject to the jurisdiction of the United States at the time of the discharge, shall be assessed a civil penalty by the Secretary of the department in which the Coast Guard is operating of not more than $5,000 for each offense. No penalty shall be assessed unless the owner or operator charged shall have been given notice and opportunity for a hearing on such charge. Each violation is a separate offense. . . . In determining the amount of the penalty . . . the appropriateness of such penalty to the size of the business of the owner or operator charged, the effect on the owner or operator's ability to continue in business, and the gravity of the violation, shall be considered by such Secretary. . . .

■ Civil penalties assessed under section 1321(b)(6) clearly constitute "adjudications," as the government apparently concedes. 5 U.S.C. § 551(6)–(7) (1976). Adjudicatory proceedings, unlike rulemaking proceedings, involve determinations of contested facts in applying rules to specific circumstances. *See United States v. Florida East Coast Railway Co.*, 410 U.S. 224, 244–45, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973); *International Telephone & Telegraph Corp. v. Local 134, International Brotherhood of Electrical Workers*, 419 U.S. 428, 442–43, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975).

Nevertheless, although section 1321(b)(6) mandates notice and a hearing prior to imposition of a penalty, it does not require that the hearing be "on the record" in accordance with section 554 of the APA.

It has been held that where a hearing is mandated by statute or by the Due Process Clause, the absence of precise statutory language requiring that a "hearing on the record" be conducted does not preclude application of the APA. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950). However, the courts have never gone so far as to rule that all statutory hearings must be conducted in accordance with the APA despite the lack of provisions that they be "on the record." The Supreme Court has conclusively rejected that position in the rulemaking context. *United States v. Florida East Coast Railway Co.*, supra, 410 U.S. at 244–46, 93 S.Ct. 810 (APA does not apply to ICC rulemaking proceedings in absence of requirement of hearing "on the record"); *United States v. Allegheny-Ludlum Steel Corp.*, supra 406 U.S. at 756–57, 92 S.Ct. 1941 (1972) (APA inapplicable where statute does not require "determination after hearing on the record"); *American Telephone & Telegraph Co. v. FCC*, 572 F.2d 17, 21–22 (2d Cir. 1978), *cert. denied*, 439 U.S. 875, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978) (APA inapplicable to FCC rulemaking not required to be "on the record").

Furthermore, the lower courts have refused to apply the APA to all adjudicatory hearings mandated by statute or by the Constitution. *See Clardy v. Levi*, 545 F.2d 1241, 1243–46 (9th Cir. 1976), (APA does not apply to Bureau of Prisons disciplinary proceedings); *Reed v. Morton*, 480 F.2d 634, 643 (9th Cir.), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973) (adjudication need not comply with APA formalities where no "hearing on the record" required by statute or Constitution).

■ Thus, the mere fact that the penalty assessed by the Coast Guard was an

---

1978). This provision will be referred to in this opinion as section 1321(b)(6). The other provisions of section 1321(b)(6) as amended are discussed *infra* at pp. 480–481.

2. Paragraph 3(i) provides,

The discharge of oil or hazardous substances (i) into or upon the navigable waters of the United States adjoining shorelines, or into or

upon the waters of the contiguous zone . . . is prohibited except . . . (B) where permitted in quantities and at times and locations . . . as the President may, by regulation, determine not to be harmful . . ."

33 U.S.C. § 1321(b)(3) (1976). *See* discussion, *infra* at p. 479.

adjudication required by statute to be made after a hearing does not mandate application of the APA. As the Court of Appeals has specified:

> The emphasis, today, in the absence of a specific statutory directive as to the requisite form of hearing, is on the requirements of the particular case, not on formalistic interpretations of statutory words, and not on the equally formalistic and often circular distinction between adjudication and rulemaking.

*RCA Global Communications, Inc. v. FCC,* 559 F.2d 881, 886 (2d Cir. 1977), *aff'd following rehearing,* 574 F.2d 727 (2d Cir. 1978). Such a pragmatic approach is also suggested by Professor Kenneth Davis, an authoritative commentator in the field of administrative law. Davis has indicated that the phrase "adjudication required by statute to be determined on the record after opportunity for an agency hearing" in section 554 of the APA should be interpreted to mean "an adjudication required to be determined after opportunity for a trial, or for a trial-type hearing, or for a formal hearing." K. Davis *Administrative Law Treatise* § 10:7 at 329–330 (2d Ed. 1978). Thus, when a statute requires a hearing, but does not specify that the hearing be "on the record," the "[a]pplicability of §§ 554, 556 and 557 . . . depends on legislative intent with respect to requirement of trial procedure." *Id.,* § 12:10 at 450. *Accord Seacoast Anti-Pollution League v. Costle,* 572 F.2d 872, 876 (1st Cir. 1978), *cert. denied sub nom. Public Serv. Comm. of New Hampshire v. Seacoast Anti-Pollution League,* 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978). Accordingly, the focus of inquiry here is whether Congress intended trial-type procedures to accompany civil penalty assessments under section 1321(b)(6).

The Senate Report on the FWPCA makes no mention of procedural requirements in section 1321(b)(6) hearings. *See* S.Rep.No. 414, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 3668, 3731–34. The House Report contains only the following reference to Section 1321 procedures:

> The language "notice and opportunity for a hearing" of Section 311(b)(6) [33 U.S.C. § 1321(b)(6)] is not intended to impose in every instance the complex procedural requirements associated with formal adjudicatory hearings on the record before a hearing examiner such as are used for ratemaking and similar federal rule issuance. The committee believes that effective administrative enforcement will be enhanced by assessment procedures which are expeditious. Provisions of title 5 of the United States Code commonly referred to as the Administrative Procedure Act, as amended, will nevertheless apply to assure due process and protection of a respondent's rights. . . . The net result is to parallel the penalty assessment method which the Coast Guard has used in the past in connection with laws which it administers.

H.R.No.911, 92d Cong., 2d Sess. 117–18 (1972). On the one hand, the Report invokes the APA, and then refers to existing Coast Guard procedures, which eschewed formal procedural requirements. As a result, the legislative history of the FWPCA does not conclusively indicate whether Congress intended the APA to apply to proceedings under section 1321(b)(6).

■ A review of the statutory language of the FWPCA and of the purpose of section 1321(b)(6), however, demonstrates that Congress did not intend to encumber Coast Guard proceedings thereunder with the elaborate procedural requirements of the APA. Rather, the statute seeks to permit the assessment of moderate civil fines expeditiously in order to deter small oil spills by onshore facilities or by vessels.

First, the statute by its terms seeks to inhibit even small, careless oil spills. Section 1321(b)(1) specifically states that "it is the policy of the United States that there should be no discharges of oil or hazardous substances into or upon the navigable waters of the United States . . ." Applicable standards, established by the Environmental Protection Agency ("EPA") in accordance with 33 U.S.C. §§ 1321(b)(3)–

(4) and Executive Order 11,735 § 1(1) (1973), prohibit any discharges of oil which, "Cause a film or sheen upon or discoloration of the surface of the water . . ." 40 C.F.R. §§ 110.3–110.4 (1977). *See United States v. Chevron Oil Co.*, 583 F.2d 1357 (5th Cir. 1978) (upholding validity of "sheen" regulation, but permitting rebuttal evidence to show that sheen not harmful).

Second, the fines imposed under section 1321(b)(6) are carefully restricted to $5,000. This modest maximum contrasts with the large penalties available under accompanying sections. Sections 1321(f)(2) and 1321(f)(3) impose liability upon operators of onshore and offshore facilities of up to $50,-000,000 for clean up costs following an oil spill. 33 U.S.C. §§ 1321(f)(2)–(3) (1976). Section 1321(f)(1) makes an oil vessel owner or operator liable for up to $150 per gross ton or $250,000, whichever is greater, for such clean up costs.

Third, it is significant that Congress designated the Coast Guard as the agency responsible for enforcement of section 1321(b)(6). By contrast, the subsections of section 1321 that impose large liabilities, as well as most other provisions of the FWPCA, are enforced by the EPA. 33 U.S.C. § 1321(d) (1976); 33 U.S.C. §§ 1321(f)(1)–(3) (1976). This vesting of responsibility in the Coast Guard comports with the broad authority that Congress has granted to that agency to police and promote safety in coastal waters. The courts have long recognized that in order to fulfill this special role, the Coast Guard must exercise summary authority that would be impermissible in other contexts. For example, in *United States v. Odneal*, 565 F.2d 598 (9th Cir. 1977), *cert. denied*, 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803 (1978), the court upheld the validity under the Fourth Amendment of a Coast Guard search of a vessel without a search warrant. The court relied upon the "very broad statutory authority [granted to the Coast Guard by Congress] to enforce . . . all applicable laws upon . . . waters subject to the jurisdiction of the United States (14 U.S.C. § 2)." *Accord United States v. Warren*, 550 F.2d 219 (5th Cir. 1977), *cert. denied sub nom. Schick v. United States*, 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 762 (1978); *United States v. Keller*, 451 F.Supp. 631, 639–40 (D.P.R.1978). The decision by Congress to confer authority for enforcement of section 1321(b)(6) upon the Coast Guard reflects a desire to dispense with procedural intricacies.

Fourth, Congress restricted the factual issues needed to establish liability under section 1321(b)(6). The section creates liability without fault; once it is shown that a spill has occurred, liability attaches. 33 U.S.C. § 1321(b)(6). Although the Coast Guard is required by statute to consider the size of the business of the owner, the effect of a fine on the owner's business, and the gravity of the violation in assessing a fine under section 1321(b)(6), these factors are relevant only in determining the size of the fine, not whether a fine should be assessed. *United States v. Marathon Pipeline Co.*, 589 F.2d 1305, 1307 (7th Cir. 1978); *Tug Ocean Prince, Inc. v. United States*, 436 F.Supp. 907, 924 (S.D.N.Y.1977), *rev'd on other grounds*, 584 F.2d 1151 (2d Cir. 1978); *United States v. Atlantic Richfield Co., supra* at 836–37 (fault assessed only in determining size of penalty). The strict liability imposed by section 1321 contrasts with the comparable provision prior to the 1972 Amendments, which allowed imposition of fines only for "knowing" discharges of oil. Water and Environmental Quality Improvement Act of 1970, P.L. 91–224 § 11(b)(5), 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 99–100.

Even the factual determination that a spill has occurred is simplified by the statute, which requires an offending vessel owner or operator to report any oil discharge to the Coast Guard. Failure to notify can result in a fine of up to $10,000 or imprisonment for up to one year. 33 U.S.C. § 1321(b)(5) (1976). *But see Ward v. Coleman*, 598 F.2d 1187 (10th Cir. 1979) (use of forced disclosure in enforcing civil penalties violates Fifth Amendment).

These considerations warrant the conclusion that in enacting section 1321(b)(6),

Congress sought to deter small oil spills by enabling the Coast Guard to assess modest fines expeditiously. To require the Coast Guard to provide formal APA procedures in every section 1321(b)(6) proceeding would defeat the purposes of the statute. Plaintiff has informed the court that in the Third Coast Guard District alone, approximately 1000 penalties per year are imposed under section 1321(b)(6). Many of these proceedings involved spills of less than 100 barrels of oil, such as the spill involved in this case. It would be anomalous to attribute to Congress an intent to require elaborate procedures in each of these proceedings that would inhibit enforcement of the statute while providing little added protection to alleged violators. *See United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *New York State Comm'n on Cable Television v. FCC*, 571 F.2d 95, 99 (2d Cir.), *cert. denied*, 439 U.S. 820, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978).

This conclusion that Congress did not intend the APA to apply to civil assessment hearings under section 1321(b)(6) is confirmed by the fact that in amending the FWPCA in 1978, Congress created two alternative sanctions in section 1321(b)(6). The Coast Guard may continue to assess fines of up to $5,000 as under prior law (now 33 U.S.C.A. § 1321(b)(6)(A) (West 1978)). Alternatively, in the discretion of the Administrator of EPA, Federal authorities may file suit in Federal district court to impose fines of up to $50,000, or, if it is shown that the spill resulted from willful negligence, of up to $250,000. *Id.* § 1321(b)(6)(B). The amendment supports the court's view that Congress desired Coast Guard proceedings under section 1321(b)(6) to be expeditious and free from the procedural complexities of the APA. Trial-type procedures are expressly reserved for the more factually complex and higher liability actions under section 1321(b)(6)(B).

The result reached here does not conflict with the decisions of three circuit courts that the APA applies to proceedings under sections 316 and 402 of the FWPCA, 33 U.S.C. §§ 1326, 1342 (1976). *Seacoast Anti-Pollution League v. Costle, supra; Marathon Oil Co. v. EPA*, 564 F.2d 1253 (9th Cir. 1977); *United States Steel Corp. v. Train*, 556 F.2d 822 (7th Cir. 1977). The sections of the FWPCA involved in those cases differ from the section at issue in this case, both in language and in purpose. Section 1326(a) permits a thermal polluter to apply to the EPA to raise allowable thermal discharge levels. The Administrator of EPA may raise such limits only "after opportunity for a *public* hearing." 33 U.S.C. § 1326(a) (emphasis supplied). Section 1342(a)(1) allows the Administrator, "after opportunity for a *public* hearing," to issue discharge permits. *Id.* § 1342(a)(1) (emphasis supplied). By contrast, section 1321(b)(6) does not mandate a "public hearing," but only a "hearing." This difference in language is significant in view of the divergent purposes of the respective hearings. The purpose of a section 1321(b)(6) hearing is simply to determine whether an oil spill has occurred, and, if so, to specify the magnitude of the fine. The issues are narrow, and the consequences of the resulting decision are confined. Hearings under sections 1326 and 1342, on the other hand, are intended to assess whether increased effluent discharge levels by major industries such as public utilities, will affect the balance of coastline ecosystems. The issues are complex, and the impact of a decision on both the public and the applicant is great. *See Seacoast Anti-Pollution League v. Costle, supra*, 572 F.2d at 876–77. It is also significant that section 1369(b)(1)(F) of the FWPCA provides that "any interested person" may gain review of EPA decisions under section 1342 in the Circuit Court of Appeals. There is no provision for review of section 1321(b)(6) assessments. 33 U.S.C. § 1369(b)(1)(F) (1976); *id.* § 1369(b)(2) (prohibiting judicial review of actions for enforcement of civil proceedings). The requirement of APA formalities in section 1342 proceedings is thus designed to facilitate judicial review. *See Marathon Oil Co. v. EPA, supra*, 564 F.2d at 1263; *see also* 33 U.S.C. § 1369(c) (specifying that judicial

review of section 1342 proceedings shall take place only after "determination . . on the record after notice and opportunity for hearing." (emphasis supplied)). No similar goal would be served by formal procedures in section 1321(b)(6) actions. These differences in statutory language and purpose are sufficient to require a different result in this case from those reached in *Seacoast, Marathon* and *United States Steel.* The resolution reached here comports with the statement of the First Circuit Court of Appeals that when a statute does not require a hearing to be "on the record," applicability of the APA "turns on the substantive nature of the hearing Congress intended to provide." *Seacoast, supra* at 876.

 Defendant Independent Bulk has also asserted that if the APA does not apply, then the hearing granted to it by the Coast Guard did not satisfy the requirements of the Due Process Clause of the Fifth Amendment. *Wong Yang Sung v. McGrath, supra.* The hearing procedures utilized by the Coast Guard, however, did not violate Independent Bulk's due process rights. Defendant was accorded an opportunity for a hearing before a Coast Guard officer who did not conduct the investigation into the spill. It received a copy of all the evidence upon which the government intended to rely in assessing a fine. The record indicates that defendant had a full opportunity to submit written evidence or to present witnesses to controvert any factual allegation of the government. There is no evidence to suggest that the hearing examiner was biased, or that he based his decision upon any data not made available to Independent Bulk. Finally, defendant was provided, and availed itself of, an opportunity to appeal the hearing examiner's decision to the Commandant of the Coast Guard in accordance with 33 C.F.R. § 1.07–9(d) (1978). There is no evidence that defendant could not have succeeded in rebutting the civil charge against him, as was done in *United States v. Chevron Oil Co., supra.* The considerable procedural protections accorded defendant pursuant to 33 C.F.R. § 1.07–9 (1978) negate the contention

that defendant's due process rights were infringed. *Board of Curators v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Frost v. Weinberger,* 515 F.2d 57, 66–68 (2d Cir. 1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); *United States v. Independent Bulk Transport, Inc., supra* at 1322 n. 6.

Accordingly, defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted, and the decision of the Coast Guard examiner imposing a fine of $600 upon defendant is affirmed. Plaintiff shall, within ten (10) days, submit a judgment, on notice, consistent with this opinion.

IT IS SO ORDERED.