In the Matter of VEST TRANSPORTA-
TION COMPANY, INC., as owner of the
M/V DOUBLE D, praying for exonera-
tion from or limitation of liability.

No. GC 73–59–S.

United States District Court,
N. D. Mississippi,
Greenville Division.

March 23, 1977.

William M. Dye, Jr., Asst. U.S. Atty.,
Northern Dist. of Mississippi, Oxford, Miss.,
Rex E. Lee, B. Wayne Vance, Admiralty &
Shipping Section, Dept. of Justice, Wash-
ington, D.C., James L. Robertson, Campbell
& DeLong, Douglas Abraham, Abraham,
Gleason & Powell, Frank S. Thackston, Jr.,
Lake, Tindall, Hunger & Thackston, Green-
ville, Miss.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court for a de-
termination of the claim of the United
States of America for a civil penalty of
$5,000 assessed against defendant Vest
Transportation Company (Vest) pursuant to
33 U.S.C. § 1321(b)(6).

The matter has been submitted by the
parties on the record, which includes a joint
stipulation of facts and briefs of the parties,
without oral argument.

The claim arises out of a collision of the
M/V Double D with the Helena Bridge on
the Mississippi River on January 5, 1973.
As the tow passed under the bridge the
current set the M/V Double D against the
west, or left-hand, pier of the span the tow
was seeking to traverse and broke up. One
of the barges, the IBS–30 was crushed
against the upriver face of that pier, be-
came bent around it in u-shape fashion and
slowly sank. The other three barges float-
ed downstream and grounded about one
mile below the bridge. Approximately 12,-

000 barrels of diesel fuel (oil) were discharged into the river (Stipulation, ¶ 6). On the day following the collision, that is, on January 6, 1973, oil was observed on the surface of the Mississippi, south of the scene of the accident for 120 miles. There were large patches of floating oil and large areas of film, sheen, and discoloration. (Stipulation, ¶ 11).

In order to prevent and control pollution, Congress provided a civil penalty for those who violated the provisions of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. §§ 1251, et seq. The civil penalty statute, 33 U.S.C. § 1321(b)(6) provides in part:

Any owner or operator of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation of paragraph (3) of this subsection shall be assessed a civil penalty by the Secretary of the department in which the Coast Guard is operating of not more than $5,000 for each offense. No penalty shall be assessed unless the owner or operator charged shall have been given notice and opportunity for a hearing on such charge. Each violation is a separate offense. Any such civil penalty may be compromised by such Secretary. In determining the amount of the penalty, or the amount agreed upon in compromise, the appropriateness of such penalty to the size of the business of the owner or operator charged, the effect on the owner or operator's ability to continue in business, and the gravity of the violation, shall be considered by such Secretary.

Pursuant to the civil penalty statute, the Coast Guard notified Vest that the discharge of oil which occurred was a harmful quantity as defined in 40 C.F.R. § 110 and therefore a violation of 33 U.S.C. § 1321(b)(3) requiring the assessment of a civil penalty pursuant to 33 U.S.C. § 1321(b)(6). The letter stated that a penalty in the amount of $5,000 was considered appropriate and notified Vest of its right to a hearing. Vest did not seek a hearing but in a letter dated September 13, 1973, denied

that the Coast Guard could administratively assess the penalty provided for in 33 U.S.C. § 1321(b)(6) outside the limitation proceeding commenced in the action sub judice. Vest also denied the constitutionality of the statute under which the penalty was assessed and denied that the quantity of oil discharged was harmful. There were other contentions made by Vest which are not necessary here to mention.

On September 19, 1973, the Chief of the Marine Safety Division, Second Coast Guard District, assessed a penalty of $5,000 against Vest. On September 22, 1973, Vest appealed to the Commander of the Second Coast Guard District and on October 24, that officer sustained the penalty.

On December 4, 1973, Vest appealed to the Commandant of the Coast Guard, contending that the proper application of those statutory factors cited in 33 U.S.C. § 1321(b)(6) should result in remission or substantial reduction of the penalty imposed. On February 11, 1974, the Commandant denied the appeal and the decision of Commandant is before the court for review in the action sub judice.

The record reflects that the Coast Guard determined that the amount of oil released into the Mississippi by Vest constituted a "harmful quantity" as proscribed by 33 U.S.C. § 1321(b)(3); that a penalty of $5,000 was appropriate, taking into consideration the size of the business of Vest, the owner of the M/V Double D, the effect the payment of the penalty might have on Vest's ability to continue in business and the gravity of the violation.

The law is settled that the penalty assessed by the Coast Guard must be sustained by this court if the assessment is supported by substantial evidence and the decision of the Commandant is neither arbitrary or capricious. 5 U.S.C. § 706.

Vest has been afforded the right to a hearing and due process at all stages of the controversy. The record contains substantial evidence to sustain the decision of the Commandant to assess the maximum penalty of $5,000. The decision is not arbi-

trary, capricious, or an abuse of discretion. The court is not justified in substituting its judgment for that of the Commandant. The decision will be approved.

The United States may submit a proper order for entry within 10 days; and, should the order conclude all issues in the action sub judice, counsel for Vest shall submit to the court within 5 days thereafter a final order removing the action from the active docket of the court.