UNITED STATES of America, Plaintiff-Appellee,

v.

**HEALY TIBBITTS CONSTRUCTION COMPANY, Defendant-Appellant.**

No. 82–4568.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1983.

Decided Aug. 26, 1983.

John E. Droeger, Hall, Henry, Oliver & McReavy, San Francisco, Cal., for defendant-appellant.

Arthur E. Gowran, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before KILKENNY, SCHROEDER, and BOOCHEVER, Circuit Judges.

SCHROEDER, Circuit Judge.

We are concerned here with an application of the civil penalty provisions of the Federal Water Pollution Control Act. A $3,000 civil penalty was assessed under that Act against the Healy Tibbitts Company, based upon the Coast Guard's findings that its vessel had discharged oil into navigable waters. The United States sued to collect the fine and the district court granted summary judgment in its favor, holding that the Coast Guard's findings were supported by substantial evidence in the administrative record.

On appeal, Healy Tibbitts contends that the Coast Guard's procedures violated both the Due Process Clause and the Administrative Procedures Act, that it was entitled to a de novo hearing in district court, and that the civil penalty provisions were misapplied in this case. We reject these contentions and affirm the district court's judgment.

I

STATUTE

The Federal Water Pollution Control Act (FWPCA), originally enacted in 1948,[1] was extensively amended and recodified in 1972 to strengthen the national policy against the discharge of pollutants into navigable and ground waters. Federal Water Pollution Control Act Amendments of 1972, Pub.L. No. 92–500 § 2, 86 Stat. 816 (1972) (codified as amended 33 U.S.C. §§ 1251–1376). Section 311(b)(3) of the Act (codified as amended 33 U.S.C. § 1321(b)(3)) was added to prohibit, *inter alia,* the discharge of harmful quantities of oil into the navigable waters in the United States;[2] the President was required in section (b)(4) to determine, by regulation, what quantities were to be considered "harmful." 33 U.S.C. § 1321(b)(4).

Pursuant to Executive Order No. 11,735, 38 Fed.Reg. 21,243 (1973), the Environmental Protection Agency promulgated 40 C.F.R. § 110.3. This regulation defines a "harmful quantity" of oil for the purpose of section 311(b) as a quantity which violates applicable water quality standards, causes a film or sheen upon or discoloration of the surface water or adjoining shorelines, or causes a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines. Section 311(b)(6)(A) (codified as amended 33 U.S.C. § 1321(b)(6)(A)), provides that a civil penalty of up to $5,000 shall be assessed for any violation of section 1321(b)(3) "after notice

---

1. Pub.L. No. 845, 62 Stat. 1155.

2. The complete text of the version of section 1321(b)(3) in effect when the incident in this case occurred provided:

 The discharge of oil or hazardous substances into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone *in harmful quantities as determined by the President* under paragraph (4) of this subsection, is prohibited, except (A) in the case of such discharges of oil into the waters of the contiguous zone, where permitted under article IV of the International Convention for the Prevention of Pollution of the Sea by Oil, 1954, as amended, and (B) where permitted in quantities and at times and locations or *under such circumstances or conditions as the President may, by regulation, determine not to be harmful.* Any regulations issued under this subsection shall be consistent with maritime safety and with marine and navigation laws and regulations and applicable water quality standards.

 33 U.S.C. § 1321(b) (1976) (emphasis supplied). That provision was amended in 1978, Act of Nov. 2, 1978, Pub.L. No. 95–576 § 1(b)(4), 92 Stat. 2467, 2468, to provide that a violation could be founded on the discharge of "such quantities [of oil or hazardous substances] as *may* be harmful." 33 U.S.C. § 1321(b)(3) (Supp. V 1981) (emphasis supplied).

and opportunity for a hearing" and charges the Coast Guard with executing its terms.[3]

## II

### CASE HISTORY

This proceeding is based upon a Coast Guard investigation of an oil spill in September 1978 which was apparently caused by a grounded barge under lease to Healy Tibbitts. The Coast Guard, pursuant to 33 U.S.C. § 1321(c)(1), arranged and paid for the removal and clean-up of the spill. Healy Tibbitts refused to accept responsibility for the spill or to pay for its clean up. *See* 33 U.S.C. § 1321(f) (imposing liability on owners or operators for the cost of removing spills for which they are responsible).

The Commanding Officer of the Coast Guard port safety station then forwarded a pollution violation report, including photographs, witness reports and a workbook, to the Coast Guard District Commander. The District Commander's Office, after reviewing these materials, forwarded the file to a Hearing Officer with a recommendation that Healy Tibbitts be assessed a $3,000 penalty for the spill. These procedures were in accordance with 33 C.F.R. § 1.07–10(b) (1982), a regulation promulgated by the Coast Guard. That regulation provides:

**3.** The current complete text of § 1321(b)(6)(A) is as follows:

> Any owner, operator, or person in charge of any onshore facility or offshore facility from which oil or a hazardous substance is discharged in violation of paragraph (3) of this subsection shall be assessed a civil penalty by the Secretary of the department in which the Coast Guard is operating of not more than $5,000 for each offense. Any owner, operator, or person in charge of any vessel from which oil or a hazardous substance is discharged in violation of paragraph (3)(i) of this subsection, and any owner, operator, or person in charge of a vessel from which oil or a hazardous substance is discharged in violation of paragraph (3)(ii) who is otherwise subject to the jurisdiction of the United States at the time of the discharge, shall be assessed a civil penalty by the Secretary of the department in which the Coast Guard is operating of not more than $5,000 for each offense. No penalty shall be assessed unless the owner or operator charged shall have been given notice and opportunity for a hear-

Reports of any investigation conducted by the Coast Guard or received from any other agency which indicate that a violation may have occurred are forwarded to the District Commander of the District in which the violation is believed to have occurred. The District Commander reviews the reports to determine if there is sufficient evidence to establish a *prima facie* case. If there is insufficient evidence, the case is either returned for further investigation or closed if further action is unwarranted. If it is determined that a *prima facie* case does exist, a case file is prepared and forwarded to the Hearing Officer, with a recommended action. A record of any prior violations by the same person or entity, is forwarded with the case file.

The Hearing Officer, pursuant to section 1.07–20, determined that there was sufficient evidence to proceed in a penalty action because a violation appeared to have been committed, and he in turn notified Healy Tibbitts as required by 33 C.F.R. § 1.07–20(b) (1982). This regulation states:

> If on the basis of the preliminary examination of the case file, the Hearing Officer determines that a violation appears to have been committed, the Hearing Officer notifies the party in writing of:

> ing on such charge. Each violation is a separate offense. Any such civil penalty may be compromised by such Secretary. In determining the amount of the penalty, or the amount agreed upon in compromise, the appropriateness of such penalty to the size of the business of the owner or operator charged, the effect on the owner or operator's ability to continue in business, and the gravity of the violation, shall be considered by such Secretary. The Secretary of the Treasury shall withhold at the request of such Secretary the clearance required by section 91 of Title 46 of any vessel the owner or operator of which is subject to the foregoing penalty. Clearance may be granted in such cases upon the filing of a bond or other surety satisfactory to such Secretary.

This text includes an amendment enacted in 1978. *See* Pub.L. No. 95–576 § 1(b)(7), 92 Stat. 2467 (1978). The amendment did not, however, materially change the provision with respect to the issues involved in this case and the parties do not contend otherwise.

(1) The alleged violation and the applicable law or regulations;

(2) The amount of the maximum penalty that may be assessed for each violation;

(3) The general nature of the procedure for assessing and collecting the penalty;

(4) The amount of penalty that appears to be appropriate, based on the material then available to the Hearing Officer;

(5) The right to examine all materials in the case file and have a copy of all written documents provided upon request; and

(6) The fact that the party may demand a hearing prior to any actual assessment of a penalty.

Healy Tibbitts requested a hearing, and one was conducted in accordance with the applicable regulations, including that which permitted Healy Tibbitts to review all the evidence in the case file. *See* 33 C.F.R. §§ 1.67–30, 40, 45, 50, 55, 60 (1982). After reviewing all of the evidence, including the material in the case file, the material submitted by Healy Tibbitts, and additional evidence from the Coast Guard Program Manager, the Hearing Officer found that a violation of section 1321(b)(3) had been established and that Healy Tibbitts should be assessed a $3,000 penalty. In an administrative appeal of this holding pursuant to 33 C.F.R. § 1.07–70 and 1.07–75 (1982), the Coast Guard Commandant affirmed.

When Healy Tibbitts refused to pay the fine, the claim was referred to the U.S. Attorney for collection pursuant to the Federal Claims Collection Act, 31 U.S.C. §§ 951–53 (1976) (codified as amended in scattered sections of 31 U.S.C. ch. 37 (1982)). The government then brought this action, properly asserting jurisdiction under 28 U.S.C. §§ 1345 and 1355. The district court, based upon a review of the record of the administrative proceedings, granted the government's motion for summary judgment, holding that the findings of the Coast Guard were supported by substantial evidence and that the fine was neither excessive nor arbitrary or capricious within the

meaning of the Administrative Procedures Act, 5 U.S.C. § 706. We have jurisdiction of the appeal under 28 U.S.C. § 1291.

## III

### DENIAL OF DUE PROCESS—IMPROPER "COMMAND INFLUENCE"

■ ■ Healy Tibbitts contends that the Coast Guard enforcement procedures deny due process because there is no opportunity for a hearing with respect to the District Commander's initial determination that a prima facie violation has been shown and that the matter should be forwarded to a Hearing Officer for further consideration. *See* 33 C.F.R. § 1.07–10(b). Healy Tibbitts acknowledges that the role of the District Commander's office at this stage is only to recommend that a proceeding should be initiated. The company maintains, however, that the District Commander's decision, in a practical sense, is dispositive of the entire case because the District Commander is superior to the Hearing Officer and his "command influence" taints any subsequent hearing provided by the Hearing Officer.

In support of its argument, Healy Tibbitts relies upon *O'Callahan v. Parker,* 395 U.S. 258, 267, 89 S.Ct. 1683, 1687, 23 L.Ed.2d 291 (1969), in which the possibility of command influence was cited by the Court as one of several factors supporting its conclusion that a military court martial could not be used in peace time to prosecute a soldier for commission of an off base rape. Appellant's attempted analogy of this proceeding, a civil administrative hearing with judicial review by Article III courts, to a criminal proceeding before a military tribunal, is inappropriate. Moreover, the Court in *O'Callahan* did not hold that the existence of a command relationship between the officer initiating charges and the one who holds a hearing, presumptively affects the fundamental integrity of the truth-determining process. *See Gosa v. Mayden,* 413 U.S. 665, 680–82, 93 S.Ct. 2926, 2936–37, 37 L.Ed.2d 873 (1973). Other appellate courts consistently have refused to assume unfairness or prejudice from "command influ-

ence" when a superior authority initiates and reviews military court-martial proceedings. *See, e.g., Curry v. Secretary of the Army,* 595 F.2d 873, 878–80 (D.C.Cir.1979); *Hendrix v. United States,* 555 F.2d 785, 790–91, 214 Ct.Cl. 50, *cert. denied,* 434 U.S. 849, 98 S.Ct. 158, 54 L.Ed.2d 117 (1977); *McDonald v. United States,* 531 F.2d 490, 493, 209 Ct.Cl. 62 (1976) (per curiam). *Cf. Morrissey v. Brewer,* 408 U.S. 471, 486, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972) (due process only requires that hearing be conducted by someone other than person initially dealing with case).

■ In the relatively few cases which have invalidated military administrative determinations on the basis of command influence, the evidence clearly demonstrated that the superior officer actually influenced the decision-making process. *See Engels v. United States,* 678 F.2d 173 (Ct.Cl.1982); *Skinner v. United States,* 594 F.2d 824, 219 Ct.Cl. 322 (1979) (evidence sufficient), *but see Gruendyke v. United States,* 639 F.2d 745, 226 Ct.Cl. 193 (1981); *Blevins v. Plummer,* 613 F.2d 767 (9th Cir.1980) (no influence shown). There is nothing in this record, however, to suggest that the Hearing Officer was in fact influenced by the Commander or that he conducted the proceedings in any way other than in a fair and impartial manner. We therefore cannot conclude that the company's due process rights were violated as a matter of law or that there is any issue of fact in this regard.

## IV

## SCOPE OF REVIEW UNDER ADMINISTRATIVE PROCEDURES ACT

Neither party disputes the fact that the Coast Guard's assessment of a civil penalty under section 1321(b)(6), for a violation of section 1321(b)(3) of the Pollution Control Act, is agency action subject to review in a subsequent judicial proceeding to collect the penalty. *See* 5 U.S.C. §§ 702, 703. The district court, in granting the government's

motion for summary judgment, reviewed the assessment under the substantial evidence test, 5 U.S.C. § 706(2)(E), and denied Healy Tibbitts' request for a trial de novo.

On appeal, Healy Tibbitts claims that the district court erred in not conducting a trial de novo. Such a trial, Healy Tibbitts argues, was warranted on either one of two theories: first, that the Coast Guard regulations relating to enforcement proceedings do not meet the requirements of 5 U.S.C. §§ 554, 556, 557, applicable to adjudicatory agency proceedings; and second, because Congress intended in section 1321(b)(6) to provide for de novo review of civil penalty assessments.

Healy Tibbitts' first theory is based on its contention that the Coast Guard regulations relating to enforcement proceedings do not satisfy the requirements of 5 U.S.C. § 556(d), which provide in pertinent part that the "proponent" in an administrative proceeding (in this case the United States) has the burden of proof.[4]

■ We reject this contention because it was never raised before the district court and therefore is not properly before this court on appeal. *See Scott v. Pacific Maritime Association,* 695 F.2d 1199 (9th Cir. 1983). We nevertheless observe that even on appeal Healy Tibbitts points to nothing in these proceedings which placed the burden of proof on the company and obviated the government's obligation to prove that a violation occurred. Not until after the Hearing Officer reviewed all the materials submitted by both parties did he make any findings and indicate that the government's evidence "established" a violation. The government demonstrated that there was a sheen around a barge and a discoloration in the surrounding waters. Under the applicable regulations, this showing established a prima facie case of a violation. *See* 40 C.F.R. § 110.3 (existence of sheen establishes harmful quantity of oil for purpose of

---

4. The company does not articulate its theory fully, but it may be based on the general rule of administrative review stated by the Supreme Court in *Citizens to Preserve Overton Park,*

*Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) that de novo review is appropriate when there are inadequate fact-finding procedures in an adjudicatory proceeding.

statute); *United States v. Boyd,* 491 F.2d 1163 (9th Cir.1973) (upholding validity of sheen test as measure of harmful quantity of oil). Healy Tibbitts in its defense contended that the amount of oil spilled was not harmful, despite the presence of a sheen. *See United States v. Chevron Oil Co.,* 583 F.2d 1357, 1363 (5th Cir.1978) (violation suggested by sheen test may be rebutted at hearing by presentation of evidence that spill was *de minimis*). The company had several opportunities to offer evidence in support of its contention but failed to do so. There was therefore no impermissible shift in the burden of proof.

Healy Tibbitts' alternative argument is that Congress intended to provide for de novo review in the event a civil penalty assessed under section 1321(b)(6) was not paid and a collection action was brought in district court. It relies on language in a House Report to a bill which was considered, but ultimately not passed as the 1972 Amendments to the Pollution Control Act.[5]

■ At least one district court has relied on that legislative history to hold that a trial de novo is appropriate in a section 1321(b)(6) civil penalty assessment case. *United States v. Delian Cruises, S.A.,* 505 F.Supp. 79 (E.D.La.1980); *cf. United States v. Malitovsky Cooperage Co.,* 472 F.Supp. 454 (W.D.Pa.1979) (de novo trial on issue of source of spill in action to recover civil penalty and clean-up costs); *United States v. General Motors Corp.,* 403 F.Supp. 1151,

1152 n. 1 (D.Conn.1975) (government stipulation to trial de novo because no adequate administrative record made). However, the overwhelming majority and, we believe, better reasoned view is that under 5 U.S.C. § 706, the Coast Guard's determination must be upheld if supported by substantial evidence in the record and if the assessment is neither arbitrary nor capricious. *United States v. Texas Pipe Line Co.,* 528 F.Supp. 728, 731–33 (E.D.Okla.1978), *aff'd,* 611 F.2d 345 (10th Cir.1979); *United States v. Slade, Inc.,* 447 F.Supp. 638, 645–46 (E.D.Tex. 1978); *Puerto Rico v. S.S. Zoe Colocotroni,* 456 F.Supp. 1327, 1350 (D.P.R.1978), *aff'd,* 602 F.2d 12 (1st Cir.1979), *modified on other grounds,* 628 F.2d 652 (1st Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981); *Matter of Vest Transportation Co.,* 434 F.Supp. 748, 749 (N.D. Miss.1977); *United States v. Atlantic Richfield Co.,* 429 F.Supp. 830, 835 n. 8 (E.D.Pa. 1977), *aff'd,* 573 F.2d 1303 (3d Cir.1978). An instructive discussion is contained in Judge Frankel's opinion in *United States v. Independent Bulk Transport, Inc.,* 394 F.Supp. 1319 (S.D.N.Y.1975), a case in which the court, while remanding to the Coast Guard because of its failure to provide the defendants with all the information in its file, rejected the contention that a trial de novo was required to review the civil penalty assessment. Judge Frankel held that where, as here, the statute contemplates a full adjudicatory hearing before the agency, a court trial de novo is inappropriate. *Id.* at 1323 n. 8;[6] *see also*

---

**5.** This bill, H.R. 11896, 92d Cong., 2d Sess. (1972), did contain a provision with language similar to that contained in the Senate bill, S. 2770, which ultimately was passed and codified at 33 U.S.C. § 1321(b)(6). The accompanying House Report, H.R.Rep. No. 911, 92d Cong., 2d Sess. 117–18 (1972), provided *inter alia:*

> The language "notice and opportunity for a hearing" of Section 311(b)(6) [33 U.S.C. § 1321(b)(6)] is not intended to impose in every instance the complex procedural requirements associated with formal adjudicatory hearings on the record before a hearing examiner such as are used for ratemaking and similar federal rule issuance. The committee believes that effective administrative enforcement will be enhanced by assessment procedures which are expeditious. Provi-

sions of title 5 of the United States Code commonly referred to as the Administrative Procedure Act, as amended, will nevertheless apply to assure due process and protection of a respondent's rights.... The net result is to parallel the penalty assessment method which the Coast Guard has used in the past in connection with laws which it administers.

**6.** After remand, Judge Sweet issued another opinion in the case. *United States v. Independent Bulk Transport,* 480 F.Supp. 474 (S.D.N.Y. 1979). He reaffirmed Judge Frankel's holding that there should be no trial de novo in a civil penalty collection action in district court, but refused to apply the adjudicatory hearing requirements of the APA (5 U.S.C. §§ 554, 556, 557) to the administrative civil penalty pro-

*Marathon Oil v. Environmental Protection Agency,* 564 F.2d 1253 (9th Cir.1977) (when APA adjudicatory hearing requirements apply determinations upheld if supported by substantial evidence). The district court properly denied Healy Tibbitts' request for a trial de novo.

### V

### APPLICATION OF POLLUTION CONTROL ACT

Healy Tibbitts claims that while it initially was charged with violating that version of section 1321(b)(3) in effect at the time of the September 1978 oil spill, it was ostensibly, and improperly found to have violated the amended version of the provision, which was more stringent.[7] Prior to the November 1978 amendments, section 1321(b)(3) prohibited the discharge of oil "in harmful quantities as determined by the President under paragraph 4 of this subsection;" subsequent to the amendments, this section prohibited the discharge of oil "in *such quantities as may be harmful* as determined by the President under paragraph 4 of this subsection." 33 U.S.C. § 1321(b)(3) (emphasis supplied).[8]

Healy Tibbitts argues that under the newer and lower violation standard contained in the amended provision, it could not, as it previously could have done, claim absence of harmfulness as a defense. *See United States v. Chevron Oil Co., supra,* (showing of *de minimis* effect under pre-amendment act could rebut regulatory finding of harmfulness under section 1321(b)(3)). It concludes that there has been a retroactive application of the Pollu-

tion Control Act which contravenes the *ex post facto* provision of the Constitution. U.S. Const. art. I, § 9, cl. 3.

Even assuming, however, that the alleged violation was determined under the amended standard, there was no constitutional violation, for the Constitution's *ex post facto* prohibition only applies to penal legislation which imposes or increases criminal punishments. *Harisiades v. Shaughnessy,* 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952); *see Artukovic v. Immigration & Naturalization Service,* 693 F.2d 894, 897 (9th Cir.1982) (ex post facto clause applies only to punishment). The penalty provisions contained in section 1321(b)(3) clearly are civil, not criminal in nature. *See United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) (fifth amendment inapplicable to section 1321(b)(6) proceeding).

Finally, Healy Tibbitts' *ex post facto* argument cannot be countenanced because even if Congress did intend the amended 1978 standard to apply to prior violations, application of that standard would have made no difference in this case. The Coast Guard clearly established a violation under the former statutory provision proscribing the discharge of harmful quantities of oil. *See supra* at 1474–1475; 40 C.F.R. § 110.3 (harmful quantity of oil defined as one which "causes a film or sheen"). Healy Tibbitts was not prevented from offering evidence with respect to the lack of actual or potential harm from the spill, but it offered no exculpatory evidence. Nor does it now contend that such evidence exists.

---

ceedings. Although we have been urged by the government to adopt this latter holding, we cannot do so because it is inconsistent with this court's decision in *Marathon Oil Co. v. Environmental Protection Agency,* 564 F.2d 1253, 1261–64 (9th Cir.1977) (APA requirements applicable to all adjudicatory proceedings in which there is an "opportunity for a hearing" before the agency determination). *See also Seacoast Anti-Pollution League v. Costle,* 572 F.2d 872 (1st Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978); *United States Steel Corp. v. Train,* 556 F.2d 822 (7th Cir.1977). Section 1321(b)(6) clearly provides

for an opportunity for a hearing prior to the assessment of a penalty.

7. The record indicates that the Hearing Officer's initial notification letter charged Healy Tibbitts with the "[d]ischarge of a *harmful* quantity of oil." The letter sent by the Hearing Officer after the hearing indicated that the nature of the violation was a "[d]ischarge of oil in such quantities *as may be harmful.*" (emphasis supplied).

8. *See supra* note 2.

Healy Tibbitts also challenges the Coast Guard's application of the Pollution Control Act's civil penalty provision on the ground that, even assuming the amended statute is applicable, it is inoperative because the President has not yet by regulation determined the quantities of oil that "may be harmful" as he is required to do under section 1321(b)(4). Under its view there is no civil penalty law currently in effect with respect to oil spills.

 Healy Tibbitts points to nothing in the statute or the legislative history of the 1978 amendment indicating that Congress intended the operation of the new standard to be conditioned on the promulgation of new regulations. Nor is there any indication that Congress meant to repeal existing regulations concerning the prohibition against the discharge of "harmful" quantities of oil. See, e.g., 40 C.F.R. § 110.3. It is apparent that Congress in amending the statute intended to broaden rather than suspend the application of the civil penalty provisions. See H.R.Rep. No. 1097, 95th Cong., 2d Sess. 1 (1978) (increasing authorizations for pollution control).

## VI

### CONCLUSION

The district court's decision, upholding the assessment by the Coast Guard of a $3,000 civil penalty against Healy Tibbitts, must be affirmed. The Coast Guard's enforcement procedures did not violate due process or the APA, there was substantial evidence to support its findings, and the award was neither arbitrary nor capricious. Healy Tibbitts was not entitled to de novo review of the Coast Guard's determination and the district court properly denied this request. Further, there was no error in connection with the Coast Guard's application of the 1978 amendment to section 1321(b)(3).

Affirmed.