**UNITED STATES of America, Plaintiff,**

v.

**HEALY TIBBITTS CONSTRUCTION COMPANY, Defendant.**

No. C–83–3072.

United States District Court,
N.D. California.

April 19, 1985.

Norman J. Ronneberg, Jr., Attorney, Torts Branch, Civil Division, U.S. Dept. of Justice, San Francisco, Cal., for plaintiff.

John E. Droeger, Henry D. Dicum, of Hall, Henry, Oliver & McReavy, San Francisco, Cal., for defendant.

### AMENDED ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

VUKASIN, District Judge.

*Introduction*

The question before the Court on defendant's motion for summary judgment is whether actions brought by the United States pursuant to the Federal Water Pollution Control Act ["FWPCA"], 33 U.S.C. § 1321, are subject to the statute of limitations contained in 28 U.S.C. § 2415 and, if so, which subdivision of that statute should properly apply. Defendant urges that the remedy provided by the FWPCA is ground-

ed on a tort theory of liability, rendering actions brought thereunder subject to the three-year time-bar of 28 U.S.C. § 2415(b). The United States contends that FWPCA suits are subject to no limitations period whatsoever; in the alternative, the government maintains that if a statute of limitations *must* be imposed the restitutionary nature of the remedy furnished by the FWPCA brings such lawsuits within the ambit of the six-year time-bar for quasi-contractual actions provided by 28 U.S.C. § 2415(a). For the reasons herein stated, the Court adopts the latter view.

## FACTS

The factual background of this case is uncomplicated. On September 6, 1978, a barge owned by defendant ran aground during rough weather near Dana Point, California. The vessel's fuel tanks ruptured, releasing between two hundred fifty and five hundred gallons of diesel fuel into the marine environment. Pursuant to 33 U.S.C. § 1321(f)(1) the Coast Guard requested that Healy Tibbitts remove the spill. Defendant refused, necessitating that the Coast Guard retain a private contractor to clean up the oil. 33 U.S.C. § 1321(c)(1). The actual cost to the government of the cleanup operation was $18,236.61, a sum which, despite repeated efforts, the United States has been unsuccessful in recovering from defendant.[1]

On June 14, 1983—more than four and one-half years after the initial oil spill—the United States instituted this action seeking to recover the costs expended by it in the cleanup. Defendant now moves for summary judgment, or for dismissal of the complaint, on the theory that the action is time-barred by the operation of the three-year statute of limitations found in 28 U.S.C. § 2415(b).

*Analysis*

The Federal Water Pollution Control act is comprehensive remedial legislation designed to assist the United States in the prevention and removal of oil pollution. Once an oil discharge is discovered, the statute empowers the government to remove or arrange for the removal of the spill, to recover the costs incurred in cleanup operations, and to assess civil penalties against polluters. 33 U.S.C. § 1321(b)(6), (c)(1), (f)(1), (2); *see United States v. Poughkeepsie Housing Authority, et al.,* C.A. No. 80–1998, slip op. at 4 (S.D.N.Y. Oct. 16, 1981). However, where the discharger properly acts to remove the pollution under § 1321(c)(1) the government's role is chiefly supervisory. *Poughkeepsie Housing Authority, supra,* slip op. at 9 n. 10; *see also* 40 C.F.R. § 1510.21(a) (promulgated under the mandate of the FWPCA). The FWPCA does not itself contain a specific statute of limitations. *United States v. Barge Shamrock,* 635 F.2d 1108, 1110 (4th Cir.1980); 33 U.S.C. § 1321.

The issue of the applicability of § 2415 to FWPCA actions has been litigated elsewhere, with inconsistent results. *Compare United States v. T/B STCO 225, et al.,* C.A. No. B–82–946 (E.D.Tex. Jan. 17, 1984) (six year statute of § 2415(a) applies), *United States v. C & R Trucking Co.,* 537 F.Supp. 1080 (N.D.W.Va.1982) (same), *Poughkeepsie Housing Authority, supra* (same), *with United States v. T/B 7026, et al.,* C.A. No. 82–0192 (W.D.La. Sept. 23, 1983) (applying three year time-bar of § 2415(b)). *United States v. P/B STCO 213, et al.,* C.A. No. G–82–464 (S.D.Tex. Aug. 25, 1983) (same). A decision on this issue properly rests on a consideration of the nature of the remedy afforded the government by 33 U.S.C. § 1321.

In *P/B STCO 213, supra,* the Court stated that actions brought pursuant to the FWPCA are not

1. The Coast Guard also assessed a $3000.00 civil penalty against Healy Tibbitts, pursuant to the authority of 33 U.S.C. § 1321(b)(3). In *United States v. Healy Tibbitts,* 713 F.2d 1469 (9th Cir. 1983), the Court of Appeals for this Circuit acknowledged the validity of the civil penalty, upholding the findings of a Hearing Officer that defendant's barge had released a harmful quantity of oil into the navigable waters of the United States.

founded upon a contract whether express or implied in fact or law.... The cleanup actions of the government are done for the benefit of the public, not for the polluter. Therefore, this Court does not construe this action as one for restitution. It does not appear to be an action in quasi-contract for unjust enrichment. *Id.*, slip op. at 2–3. The premise underlying this analysis is that actions done for public benefit cannot equally result in enrichment to the recalcitrant polluter. With that reasoning this Court cannot agree. *Cf. T/B STCO 225, supra,* slip op. at 3.

■ A claim for restitution in quasi-contract is based on the well-established principle that one may not be unjustly enriched by the acts of others. It differs from a damages action in that the damages recovery in tort is intended to restore the plaintiff—"paying" him, at least theoretically, for his injury or loss. The restitution action, however, is not aimed at plaintiff's restoration, but at forcing the defendant to disgorge benefits which it would be unjust for him to keep. *See* Dobbs, Remedies, at 224 (West 1973). An implied-in-law or quasi-contract is a species of restitution which arises where one party has been unjustly enriched at the expense of another. *See, e.g., City of Chattanooga v. Louisville & Nashville R.R. Co.,* 298 F.Supp. 1 (E.D.Tenn.1969), *Chase Manhattan Bank v. Banque Intra, S.A.,* 274 F.Supp. 496 (S.D.N.Y.1967). A quasi-contractual relation is implied regardless of the parties' intent: it arises wherever the defendant, in equity and good conscience, should not be permitted to keep gains he has realized. *See* Dobbs, *supra,* at 235; *see generally* 66 Am.Jur.2d, §§ 2, 3.

As the Court pointed out in *T/B STCO 225, supra,* slip op. at 3–4, Section 115 of the Restatement of Restitution is instructive in the determination of the issue presented to the Court. That Section states in full:

§ 115. Performance of Another's Duty to the Public.

A person who has performed the duty of another by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if

(a) he acted unofficiously and with intent to charge therefore, and

(b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety.

*Id.* The statutory scheme here clearly envisions that federal intervention in oil spill cleanups is done unofficiously and with intent to charge. Furthermore, the Federal Water Pollution Control Act in its entirety reflects a Congressional finding that the immediate cleanup of oil spills is necessitated by considerations of public health and safety. Thus, the only arguable basis upon which the analogy of § 1321(f)(1) to quasi-contract may be found deficient is the question of whether the owner of the discharging vessel has a duty to undertake removal.

■ Other Courts have ruled affirmatively on this issue.[2] In *Barge Shamrock, supra,* an action brought under the FWPCA, the Court did not find it necessary to rule on the statute of limitations question. However, the duty issue *was* addressed; in this connection, the Court specifically stated that "[t]he primary duty for cleaning up the oil spill was, of course, upon the [owner and operator]." *Id.,* 635 F.2d at 1110; *accord, Poughkeepsie Housing Authority, supra,* slip op. at 9 n. 10. Actions brought pursuant to § 1321(f)(1) thus appear to fall squarely within the scope of § 115 of the Restatement, and the Court is of the opinion that this construction is proper for statute of limitations purposes. The portrait of a polluter indifferently standing idle while its oil spill is neutralized at public expense—and thereafter spiritedly disavowing any responsibility for recompensing the United States—offers as compelling an example of unjust

---

**2.** While the Court is apprised of authority to the contrary—*see T/B 7026, supra; P/B STCO 213,* *supra* —this does not recommend itself as the better-reasoned view.

enrichment as has lately been brought before the Court.

■ Finally, while the public undeniably benefits from the remedial provisions of the Federal Water Pollution Control Act—in health, aesthetics, and in quality of life—government suits brought thereunder do not have as their sole object such impalpable considerations of the common welfare. These actions further effect a needed restoration of the *status quo ante.* Where a polluter itself acts promptly to remove an oil spill, the government's role is supervisory; disbursement of public funds is accordingly minimal. 33 U.S.C. § 1321(c)(1); 40 C.F.R. § 1510.21(a). Where, however, the polluter refuses to perform a cleanup the United States must, at public expense, employ a private contractor to do the necessary work. In endeavoring, by legal action, to recover such expenditures, the government is doing no more than seeking restitution of tax dollars expended in performance of a task the primary responsibility for which is properly the polluter's. Cost recovery suits under the statute thus help to insure that the public fisc is not depleted by the unjust enrichment of those responsible for oil pollution. For this reason too, actions brought by the United States under the FWPCA must clearly be characterized as quasi-contractual in nature.[3] *See Poughkeepsie Housing Authority, supra,* slip op. at 9.

### Conclusion

■ The Court is of the opinion that actions brought pursuant to 33 U.S.C. § 1321 to recover funds disbursed by the United States to clean up oil spills are subject to the six year statute limitations contained in 28 U.S.C. § 2415(a). In the case at bar, therefore, the Court finds that the government's cause of action against defendant Healy Tibbitts is not barred by the statute, and defendant's motion for summary judgment on the statute of limitations question must accordingly be denied. Because of this ruling, it is unnecessary to consider the government's alternate contention, i.e., that suits under the Federal Water Pollution Control Act are exempt from § 2415 altogether.

SO ORDERED.

---

**3.** In making this determination, however, the Court wishes to express its view that imposition of a six year statute of limitations may serve to place potential defendants at a considerable disadvantage vis-a-vis the United States. Three years should be an ample period for the institution of § 1321 actions, and the Court both questions the government's tardiness in filing the instant suit, and exhorts the authorities concerned to be less dilatory in the maintenance of future actions. Based on the foregoing, though, the Court nonetheless concludes that FWPCA actions are subject to the six-year time-bar of 28 U.S.C. § 2415(a), an interpretation which comports with the Ninth Circuit's admonition that the Federal Water Pollution Control Act "should be read charitably in light of the purpose to be served [citations] ... and is entitled to a liberal construction to accomplish [its] purposes...." *United States v. City of Redwood City,* 640 F.2d 963, 968 (9th Cir.1981).