**UNITED STATES of America, Plaintiff,**

**v.**

**CHOTIN TRANSPORTATION, INC., Defendant.**

**Nos. C–1–85–1082, C–1–85–1535.**

United States District Court, S.D. Ohio.

Oct. 29, 1986.

Robert Behlen, Jr., Cincinnati, Ohio, for plaintiff.

William Ellis, Cincinnati, Ohio, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on motions of the Plaintiff for Summary Judgment (C–1–85–1082, Doc. 7; C–1–85–1535, Doc. 5), Defendant's Responses (C–1–85–1082, Doc. 22; C–1–85–1535, Doc. 7), Plaintiff's Replies (C–1–85–1082, Doc. 24; C–1–85–1535, Doc. 9), and the Certified Administrative Records filed in both cases.

Plaintiff United States filed these consolidated actions to collect civil penalties from defendant Chotin Transportation, Inc., for the discharge of oil into navigable waterways. Defendant Chotin claims that the quantity of oil spilled was not harmful and that the penalties assessed were arbitrary and capricious.

For the reasons set forth below, the Court hereby grants Plaintiff's Motions for Summary Judgment.

## I.

### FINDINGS OF FACT

Plaintiff filed the Complaint in C–1–85–1082 (*Chotin I*) on June 10, 1985. On

August 22, 1985, plaintiff filed its Motion for Summary Judgment. (*Chotin I,* Doc. 7.) On October 2, 1986, defendant Chotin responded. (*Chotin I,* Doc. 22.) And on October 14, 1986, plaintiff replied. (*Chotin I,* Doc. 24.)

On September 16, 1985, plaintiff filed its Complaint in C–1–85–1535 (*Chotin II*). Plaintiff filed its Motion for Summary Judgment on November 4, 1985. (*Chotin II,* Doc. 5.) Chotin filed its memorandum in opposition on December 4, 1985. (*Chotin II,* Doc. 7.) And plaintiff replied on December 11, 1985. (*Chotin II,* Doc. 9.)

These actions were consolidated by Order of the Court on December 9, 1985. (*Chotin I,* Doc. 12.)

## A. CHOTIN I

In *Chotin I,* on August 23, 1983, the tank barge CHOTIN 2084 was being loaded with unleaded regular gasoline at the Gulf Oil Corporation dock at Mile 486.6 of the Ohio River. During the loading operation, the tank overflowed and gasoline was discharged directly into the Ohio River in a quantity that may have been harmful.

In the Coast Guard Water Pollution Violation Report dated December 7, 1983, investigators reported that two sheens, approximately eight feet by 20 feet and six feet by six feet were observed when they arrived on the scene. They estimated that 20 gallons of gasoline were discharged into the Ohio River.

In its March 14, 1984, reply, Chotin noted that while the Coast Guard estimated the spill at 20 gallons, the Gulf Oil dockman and their tankerman estimated the spill to be one to two gallons in their statements. However, it did not challenge the Coast Guard report that two substantial sheens were created by the spill or the fact that the spill had occurred.

In *Chotin I,* C.G. Hill, a Coast Guard hearing officer, wrote to Chotin on February 10, 1984, advising defendant that he had been assigned to hear a case in which oil was discharged into navigable waters on August 23, 1983. He told Chotin that if the allegation were proved a civil penalty of up to $5,000 could be imposed. He enclosed a copy of the case file which was the basis for the allegation.

He wrote, "This letter is to advise you that civil penalty proceedings have begun and to offer you the opportunity for a hearing on the matter." A hearing, he said, would be conducted pursuant to 33 C.F.R. § 1.07. If Chotin wanted a hearing, Chotin was advised to submit a written request within 30 days. He also indicated that after reviewing the case file he had made a preliminary determination that a civil penalty of $1,500 would be appropriate.

On March 14, 1984, counsel for defendant Chotin wrote to the hearing officer and requested a reduction in the proposed penalty. Chotin did not request a hearing. On March 23, 1984, the Coast Guard hearing officer issued his decision in letter form. He found that oil had been discharged in a harmful quantity on August 23, 1984, and assessed a $1,500 civil penalty. Chotin was advised of its right to an administrative appeal.

In its appeal by letter dated April 13, 1984, Chotin indicated that while it did not deny that a spill of between one and 20 gallons occurred, it felt that the imposition of a civil penalty of $1,500 was an abuse of discretion by the hearing officer.

On December 5, 1984, Chotin's appeal was denied. "It is incorrect to compare the penalty in this case with penalties assessed in other cases. Each case rests on its own set of facts and the Hearing Officer must decide each case solely on the evidence before him."

## B. CHOTIN II

In *Chotin II,* on May 19, 1984, the tank barge Chotin 2883 cracked a butt weld while entering Lock and Dam 27 at Mile 187.0 on the Upper Mississippi River. Approximately 1,440 gallons of gasoline were discharged into the river.

Chotin relies on a statement made by a Coast Guard investigator that in the opin-

ion of the investigator the degree of impact of the incident was "negligible." (Administrative Record at 49.)

However, the investigator further reported that the quantity of gasoline was sufficient to create a visible sheen, sludge, or emulsion on or under the surface of the water. (*Id.*) His summary states, "Upon arrival of the pollution response team a visible sheen was present within a boomed area along side the vessel and gasoline was observed bubbling from beneath the waterline of the number 1 cargo tank of the barge." (*Id.* at 5.) He also reported that cleanup would not be necessary because the gasoline was being dissipated by the water current and winds. (*Id.* at 6 and 31.) It was also reported that thunder showers and strong winds aided in dissipating the product. (*Id.* at 17.) The Administrative Record contains color photographs of the gasoline in the water which clearly shows the sheen created by the gasoline. (*Id.* at 7–9.)

In *Chotin II,* C.G. Hill, the same Coast Guard hearing officer in *Chotin I,* on September 24, 1984, advised Chotin that he had received a report of an allegation that oil had been discharged into a navigable waterway and that if the allegation were proved that a civil penalty of up to $5,000 could be assessed.

Chotin was notified that no penalty would be assessed until Chotin was given an opportunity to respond to the charges. He sent Chotin a copy of the case file which was the basis of the allegation. He advised Chotin that if a hearing was desired, it should be requested within 30 days. He also told Chotin that on the basis of his review of the file, he had made a preliminary determination that $3,600 would be an appropriate penalty in this case for the discharge of 1,440 gallons of gasoline. (*Chotin II* Administrative Record at 50.)

On October 23, 1984, Chotin requested an extension of time until November 30, 1984, in which to respond. (*Id.* at 53.) The request was granted. (*Id.* at 54.) In its response, dated November 27, 1984, Chotin did not deny that the spill occurred, but offered reasons for mitigating the penalty. Chotin again did not request a hearing. (*Id.* at 55–56.)

The hearing officer considered the arguments presented by Chotin but decided to impose the $3,600 penalty because no new information of substance had been presented for his consideration. He advised Chotin of its right to an administrative appeal of his decision. (*Id.* at 58–59.)

On January 15, 1985, Chotin requested an administrative appeal. Chotin said, "While we do not deny that a discharge of approximately 1,440 gallons of gasoline occurred, we contend that an assessment of a $3,600.00 penalty by the Hearing Officer constitutes an abuse of discretion in that the penalty is highly disproportionate to the amount of the discharge." (*Id.* 60–61.)

On June 5, 1985, the appeal was denied. Again, it was stressed in the decision of the appeals officer, "Penalty amounts assessed in selected other cases do not provide any standard upon which to judge the assessment in this case. Each case must be judged upon its own facts and circumstances. The Hearing Officer must make a decision based upon the record of the case before him. 33 CFR 1.07–15(b)." (*Id.* at 66–67.)

## II.

### OPINION

The questions presented in this case are whether the decisions of the Coast Guard in imposing the civil penalties was supported by substantial evidence and whether the amounts of the penalties imposed were arbitrary and capricious.

██ Judicial review of a civil penalty imposed by the United States Coast Guard under 33 U.S.C. § 1321(b)(6) is limited to a review of the administrative record. The determination of the Coast Guard must be upheld if it is supported by substantial evidence in the record and if the assessment is neither arbitrary nor capricious. *United States v. Healy Tibbitts Construc-*

*tion Co.*, 713 F.2d 1469, 1474–1476 (9th Cir.1983).

In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), the Supreme Court held:

> *De novo* review of whether the Secretary's decision was "unwarranted by the facts" is authorized by [5 U.S.C.] § 706(2)(F) in only two circumstances. First, such *de novo* review is authorized when the agency action is adjudicatory in nature and the agency factfinding procedures are inadequate. And, there may be independent judicial factfinding when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action.

*De novo* review is not appropriate under 33 U.S.C. § 1321(b)(6) because the statute mandates adequate factfinding procedures. *United States v. Healy Tibbitts Construction Co.*, 713 F.2d at 1474 n. 4; *United States v. Texas Pipe Line Company*, 528 F.Supp. 728, 732 (E.D.Okla.1978), *aff'd*, 611 F.2d 345 (10th Cir.1979); *United States v. Atlantic Richfield Co.*, 429 F.Supp. 830, 837 (E.D.Pa.1977), *aff'd*, 573 F.2d 1303 (3d Cir.1978); *United States v. Independent Bulk Transport, Inc.*, 394 F.Supp. 1319, 1323 n. 8 (S.D.N.Y.1975) (Frankel, J.). *But see United States v. Delian Cruises*, 505 F.Supp. 79 (E.D.La.1980) (*de novo* review granted where there was a genuine question of material fact as to the source of the pollution—unlike the case at bar where defendant Chotin did not contest in the administrative proceedings that it was the source).

The statute provides, "No penalty shall be assessed unless the owner or operator shall have been given notice and an opportunity for a hearing on such charge." 33 U.S.C. § 1321(b)(6)(A). Here, defendant Chotin was provided with notice and the opportunity for a hearing in both cases.

Defendant Chotin did not request a hearing in either case. However, it did submit letters arguing for mitigation and reduction of the amounts of the civil penalties. Defendant Chotin had the opportunity to challenge the determination of the Coast Guard that the spills in these two cases were harmful, but it did not seek to introduce any evidence that the spills were not harmful as was done in *United States v. Chevron Oil Company*, 583 F.2d 1357 (5th Cir.1978).

### A. The Substantial Evidence Standard.

■ The Court must determine whether the Coast Guard's findings are supported by substantial evidence. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

There is substantial evidence in the records in both cases to support the determination of the Coast Guard that the spills occurred, that Chotin was responsible for the spills, and the oil was discharged in quantities which may have been harmful as sheens were created.

Under administrative regulations, evidence of a sheen provides sufficient basis for assessment of a civil penalty. Discharges of oil which cause a film or sheen upon the surface of the water are determined to be harmful. 40 C.F.R. § 110.3 (1985). *United States v. Healy Tibbitts Construction Company*, 713 F.2d at 1474–1475; *United States v. Chevron Oil Company*, 583 F.2d 1357, 1360 (5th Cir.1978); *United States v. Hollywood Marine, Inc.*, 519 F.Supp. 688, 691–692 (S.D.Tex.1981); *United States v. Slade, Inc.*, 447 F.Supp. 638, 645 (E.D.Tex.1978); *United States v. W.B. Enterprises, Inc.*, 378 F.Supp. 420 (S.D.N.Y.1974).

Defendant relies on *United States v. Chevron Oil Company*, 583 F.2d 1357 (5th Cir.1978), as authority that plaintiff's actions in cases such as this are reviewable by a court. However, plaintiff does not argue that its actions are not reviewable by this Court. Rather, the standard of review here is that the findings of fact by the agency must be upheld if they are supported by substantial evidence. Here, the

determination of the Coast Guard is supported by substantial evidence in the record.

In *Chotin I*, the Coast Guard investigator estimated that approximately 20 gallons of gasoline were spilled into the river. He further observed two sheens of oil on the surface of the water. Although the two individuals responsible for the spill, the Gulf dockman and the Chotin tankerman, estimated that the spill was only one to two gallons, the statutory criteria of a harmful discharge was met by the observation of the sheens. Chotin did not dispute the presence of the sheens—indeed, its employees had deployed absorbent booms around the area of the sheens. Chotin had an opportunity to present evidence that the spill was not harmful in spite of the presence of the sheens, but it did not request a hearing.

In *Chotin II*, the Coast Guard investigator observed gasoline bubbling to the surface from beneath the water line of Chotin's barge which created a sheen on the Upper Mississippi River. Defendant now argues (Reply at 2) that "the Coast Guard's own report creates a substantial issue of fact with regard not only to the quantity of the spill, but also with regard to the arbitrariness of the fine." Chotin did not deny during the administrative proceedings that approximately 1,440 gallons of gasoline were spilled. ("While we do not deny that a discharge of approximately 1440 gallons of gasoline from the CH 2883 occurred...." *Chotin II* Administrative Record at 60.) Chotin had an opportunity to come forward with evidence in the administrative proceedings to show that the discharge was less than that claimed by the Coast Guard. Chotin failed to do this.

Nor did Chotin introduce evidence that the effects of the spill were not harmful. In *Chevron*, the case upon which Chotin relies, Chevron presented evidence at the administrative hearing that the effect of the oil spill was not harmful even though it caused a sheen on the water and the government did not produce rebuttal evidence that the spill was harmful.

In *Chevron*, the Fifth Circuit held that evidence of a sheen was a sufficient basis on which to assess a penalty unless the defendant proves that its spill was not harmful under the circumstances. 583 F.2d at 1364. Chevron produced an expert witness, " 'an expert biologist in the field of marine life and marine organisms and as an expert in the effect of oil in such marine life and organisms,' " at the administrative hearing who testified that it was his opinion that under the circumstances of the spill that it did not have a harmful effect despite the presence of the sheen. 583 F.2d at 1360. Chotin did not request an administrative hearing and did not offer any evidence that the sheen was not harmful.

Chotin argues that the spill was not harmful because the gasoline was dissipated by the thunderstorm. However, environmental harm resulted when the spill occurred, and the defendant was subject to civil liability which was not abated when the weather conditions dissipated the gasoline. *See United States v. W.B. Enterprises, Inc.*, 378 F.Supp. at 422 (defendant was subject to civil liability for the spill which was not abated by the subsequent removal of oil from the river).

There is substantial evidence in the administrative records in both cases that Chotin was responsible for oil spills that were determined to be harmful based upon the sheen test. Chotin did not challenge the fact that the spills occurred, and it did not present any evidence that the spills were not harmful despite the presence of the sheens. Accordingly, the decisions of the Coast Guard are supported by substantial evidence.

### B. The Arbitrary and Capricious Standard.

Review under the arbitrary and capricious standard is narrow. In *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (citations omitted), the Supreme Court said:

Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." ... The agency must articulate a "rational connection between the facts found and the choice made." ... While we may not supply a reasoned basis for the agency's action that the agency itself has not given, ... we will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned.

■ Review under this standard is also confined to the administrative record. In reviewing the decisions of the Coast Guard to impose the $1,500 and $3,600 civil penalties under the arbitrary and capricious standard, the Court must determine whether the Coast Guard considered the relevant factors and whether there was a clear error of judgment. If the agency has articulated a rational connection between its findings and the assessment of the penalty in the record, the inquiry is at an end. Review is limited to the administrative record. And the actions of the agency in other cases are completely irrelevant under this standard of review.

Courts have previously upheld civil penalties where the defendant has charged that the penalty was arbitrary and capricious. *United States v. Healy Tibbitts Construction Company*, 713 F.2d at 1477; *Matter of Vest Transportation Company, Inc.*, 434 F.Supp. 748, 749–750 (N.D.Miss. 1977). One court has upheld the imposition of a civil penalty of $2,000 for a spill of five to 15 gallons. *United States v. Beatty, Inc.*, 401 F.Supp. 1040 (W.D.Ky.1975) (where the penalty is within the limits imposed by the statute, the court has no authority to reduce or eliminate it). Counsel have not found any reported cases where the civil penalty imposed under 33 U.S.C.

§ 1321(b)(6)(A) was found to be arbitrary and capricious.

■ Defendant Chotin complains that the civil penalties assessed were arbitrary and capricious. However, the civil penalties in these cases were properly assessed under the statutory criteria. As required by 33 U.S.C. § 1321(b)(6)(A), the Coast Guard considered the appropriateness of the penalty to the size of the business of the owner, the effect on the owner to continue its business, and the gravity of the violation.

Chotin does not argue that the penalty was not appropriate for the size of its business or that the penalty would force the business to close. Rather, Chotin argues that the penalty of $1,500 in *Chotin I* is out of proportion to a spill of 20 gallons and that the civil penalty of $3,600 in *Chotin II* is out of proportion to a spill of 1,440 gallons of gasoline.

In assessing both penalties, the Coast Guard hearing officer considered the amount and cause of the spills and Chotin's violation history. Chotin presented no evidence to the Hearing Officer that the penalty was not appropriate for the size of its business or that the amount of the penalty would cause Chotin to go out of business.

It is with some reluctance that the Court holds that the decision of the Coast Guard in *Chotin I* was not arbitrary and capricious. Twenty gallons of fluid discharged into the Ohio River approaches a "de minimus" standard. The average household bathtub will hold forty gallons of water and the flow of the Ohio River must be measurable in multiples of thousands of gallons of water flowing past a given point per minute. The question of the lack of harmful effect of the spill, however, must be raised in the first instance at an administrative hearing. The record in this matter indicates that Chotin elected not to participate in an administrative hearing and by so doing denied this Court an opportunity to consider the above questions. Without an ability to do so, the "relevant factors" and the "clear error of judgment" referred to in *Bowman Transportation, Inc.*, 419

U.S. at 285, 95 S.Ct. at 442 are not available for consideration.

Accordingly, the decisions of the Coast Guard were not arbitrary and capricious, and judgment will be entered in favor of the United States.

### III.

### CONCLUSION OF LAW

A. Judicial review of a civil penalty imposed by the United States Coast Guard under 33 U.S.C. § 1321(b)(6) is limited to a review of the administrative record. The determination of the Coast Guard must be upheld if it is supported by substantial evidence in the record and if the assessment is neither arbitrary nor capricious. *United States v. Healy Tibbitts Construction Co.*, 713 F.2d 1469, 1474–1476 (9th Cir.1983).

B. There is substantial evidence in the administrative record to support the imposition of civil penalties in both cases.

C. The imposition of a civil penalty of $1,500 in *Chotin I* and of a civil penalty of $3,600 in *Chotin II* was neither arbitrary nor capricious.

### IV.

### ENTRY OF JUDGMENT

#### A.   *C–1–85–1082*

IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiff United States of America shall have judgment against Defendant Chotin Transportation, Inc., in Civil Action No. C–1–85–1082 in the amount of $1,500.00, plus interest from the date of judgment until paid and costs.

#### B.   *C–1–85–1535*

IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiff United States of America shall have judgment against Defendant Chotin Transportation, Inc., in Civil Action No. C–1–85–1535 in the amount of $3,600.00, plus interest from the date of judgment until paid and costs.

IT IS SO ORDERED.